WICK BUILDING SYSTEMS, INC., AGRI-BUILDINGS DIVISION, Plaintiff-Appellant, *v.* WILLIAM H. BUNNING, JR., Defendant-Appellee.—(MEL-O-DEE BUILDERS, INC., Defendant.)

Third District    No. 81-470

Opinion filed June 14, 1982.

HEIPLE, J., dissenting.

John W. Howard, of Bartley, Fraser, Parkhurst, Hession & Renner, of Peoria, for appellant.

Dean B. Rhoads, of Sutkowski & Washkuhn Associates, of Peoria, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Wick Building Systems, Inc. (Wick), a manufacturer of agricultural buildings, on March 28, 1978, entered into an agreement with William H. Bunning, Jr. (Bunning), whereby Bunning would be a dealer for the sale of such buildings. On August 21, 1978, Bunning assigned his dealership agreement to Mel-O-Dee Builders, Inc. (Mel-O-Dee), a business owned by Bunning. The assignment agreement contained language, the effect of which was to make Bunning a guarantor to an extent later to be deter-

mined of certain obligations. The assignment of the dealer agreement was approved of and consented to by Wick.

On June 4, 1979, Mel-O-Dee ordered from Wick a hog confinement building to be delivered to a customer. Prior to various change orders the contract price for the building was $14,926. Mel-O-Dee also had delivered to Wick its promissory note in the sum of $12,493.82. On March 31, 1980, the plaintiff Wick filed suit against Mel-O-Dee and Bunning for payment of the promissory note and for final payment of $12,607.50 under the June 4, 1979, contract for construction of the hog confinement building. On June 16, 1980, the circuit court of Peoria County dismissed counts I and II of Wick's complaint for lack of jurisdiction. No appeal from the dismissal of the counts was taken. On September 25, 1980, counts III and IV alleging that money was due to the plaintiff Wick from Bunning as guarantor of the corporate defendant Mel-O-Dee were dismissed for failure to state a cause of action; however, the court granted Wick 21 days to file an amended complaint. Wick took no further action in the case until April 7, 1981, when it filed a motion for a final judgment order. Over Bunning's objection the court on July 29, 1981, entered a final order of dismissal whereby Wick's complaint was dismissed without leave to amend. This appeal ensued.

As the issues in this appeal are addressed, the pleadings, court orders and contractual agreements will be set forth as they become pertinent.

The defendant Bunning first contends that Wick failed to file a timely appeal from the trial court's order of September 25, 1980, and that this court does not have jurisdiction to review the circuit court's dismissal of the complaint.

■■ This jurisdictional issue is raised by the defendant Bunning in his appellee's brief and is predicated upon the argument that even though Wick was granted the right to amend its pleadings, the trial court's order of dismissal of the complaint was not grounded on technical defects, but was based on a determination that the factual allegations in the complaint were insufficient to state a cause of action as a matter of law. Bunning further argues that the dismissal order was final because Wick did not in fact amend or attempt to amend its complaint, which is indicative of a conclusion that the plaintiff Wick acknowledged that the complaint could not be cured so as to state a cause of action and hence it was a final appealable order from which Wick did not file a notice of appeal within 30 days. Bunning's argument is appealing, since it is obvious that the court's order of September 25, 1980, was directed at the substantive allegations of the complaint; however, to adopt such argument would require a determination in many instances as to the basis for a trial court's order of dismissal, and it is conceivable that in many instances the picture could be a cloudy one. The better and correct rule to apply is that an order of

dismissal followed by an election to stand on the complaint is not a final appealable order until a subsequent order dismissing the suit is entered. This is true even if the time granting leave to amend the complaint has run. (See *Martin v. Marks* (1980), 80 Ill. App. 3d 915, 400 N.E.2d 711.) We reject Bunning's argument and hold that this court does have jurisdiction of this appeal.

Wick further asserts that the trial court incorrectly dismissed counts III and IV of its complaint on the grounds that they failed to state a cause of action.

Counts III and IV of the complaint, which sought liability from Bunning, were predicated upon language contained in paragraph 8 of the dealer agreement and paragraph 3 of the assignment agreement from Bunning to Mel-O-Dee.

Paragraph 8 of the dealer agreement provides as follows:

"*Erection and Payment.* Dealer shall coordinate erection details between manufacturer and customer, and between any other tradesmen hired by customer, to assure the orderly and prompt completion of Wick Agri-Buildings. Dealer understands that unless otherwise specifically and expressly agreed, the purchase price shall be paid as set forth in the customer's purchase order as accepted by Manufacturer.

Dealer shall be responsible for collection of the purchase price of the Wick Agri-Building product from customer within the times provided therefore, and shall promptly forward any and all payments upon receipt. All checks and drafts shall be made directly payable to Wick Agri-Buildings Division of Wick Building Systems, Inc.

It shall be the responsibility of Dealer to secure customers for Manufacturer which are financially solvent, and to aid and assist customers as necessary in obtaining of necessary mortgage loan financing. (It is not anticipated nor intended by this provision that Dealer should become an 'arranger of financing' or 'arranger of credit' as those or similar terms are defined by applicable Trust-In-Lending laws.)

Accordingly, in the event customer shall fail, or be unable to pay the full purchase price to Manufacturer, through no fault or neglect on the part of the Manufacturer, and if Manufacturer shall have diligently pursued available lien remedies, then Dealer shall, and hereby does agree to, indemnify, and save harmless Manufacturer, and shall thereupon pay to Manufacturer the balance of the purchase price of said Wick Agri-Buildings product, less Dealer's Commission. Upon receipt of said payment, Manufacturer shall assign to Dealer, Manufacturer's claim, and all causes of action there-

under, against customer with respect to said Wick Agri-Buildings product."

Paragraph 3 of the assignment agreement provides as follows:

"Assignor is and agrees to remain personally liable and responsible to Manufacturer for the full and complete performance of all the duties, responsibilities, and obligations of Dealer under said Agreement, notwithstanding this Assignment, and agrees to and hereby does indemnify, defend, and save Manufacturer harmless with respect to all of the indemnities on the part of Dealer therein contained."

The defendant Bunning argued before the trial court that an interpretation of the above provisions imposes upon him liability as a guarantor to plaintiff Wick of the obligations of third party customers of Wick. Stated conversely, Bunning argued that any obligation which was the result of a direct purchase by Mel-O-Dee ("Dealer," by virtue of the assignment agreement) from Wick ("Manufacturer") is not an obligation under the assignment agreement for which he (Bunning) is personally liable. The trial court agreed with Bunning's interpretation and granted Bunning's motion to dismiss.

This court now has the duty of determining whether the trial court was correct in construing the dealer agreement and assignment agreement. In approaching that task we note that neither Wick nor Bunning claim that the agreements are ambiguous; however, they are poles apart as to what they believe to be the proper construction of the agreements. In construing the documents involved, we first direct our attention to paragraph 3 of the assignment agreement. An examination of this paragraph discloses that by the language therein Bunning assumed personal liability to Wick for complete performance of all duties, responsibilities and obligations of Mel-O-Dee *under the dealer agreement.* By the assignment agreement Mel-O-Dee took Bunning's place as a dealer of Wick; however, by the language of paragraph 3 of the assignment, he remained obligated to continue to fulfill certain duties placed upon him when he was granted a dealership by Wick. To determine the scope of the obligations imposed upon Bunning by the assignment, an examination must be made of the dealer agreement.

■■ In ascertaining the meaning of certain provisions in a written contract, the meaning must be determined by construing the contract in its entirety. (*White v. White* (1978), 62 Ill. App. 3d 375, 378 N.E.2d 1255.) With this rule in mind we first direct our attention to paragraph 8 of the dealer agreement. This paragraph establishes an arrangement whereby the dealer (Mel-O-Dee by assignment) is to act in the capacity of a sales representative for Wick. As such representative the dealer is to procure financially solvent customers for Wick and if necessary assist those cus-

tomers in obtaining financing for the purchase of the manufacturer's (Wick's) merchandise. A prospective customer must submit an offer to purchase which must be approved by Wick before a contract is created. Upon approval or acceptance of an offer to purchase, then a contractual relationship exists between the ultimate purchaser and Wick.

■■ This construction of the dealer agreement is bolstered by the language in paragraph 9 of the agreement, which provides that the dealer is to be compensated by commissions from sales. The paragraph also refers to Wick as the "Manufacturer" and Bunning as "Dealer." By virtue of the assignment, Mel-O-Dee replaced Bunning as the "Dealer." The documents in question specifically designated who is the manufacturer and who is the dealer, but there is no express definition as to who is a "customer." By this omission it can only be concluded that the customer was to be the prospective purchaser solicited by the dealer and accepted by the manufacturer. In the instant case the indebtedness to Wick was not incurred by an accepted customer but by the dealer, Mel-O-Dee. Harking back to paragraph 8 of the dealer assignment, it is specifically provided that in the event a customer shall fail to pay through no fault of the manufacturer and if manufacturer shall have diligently pursued available lien remedies, then the dealer shall indemnify and save harmless the manufacturer by paying the balance of the customer's purchase price less dealer's commission. We conclude that the trial court properly construed the documents in question by determining that Bunning was guarantor for only the indebtedness of third party customers and none is *in esse* in the situation presented in this appeal.

Wick advances the argument that Mel-O-Dee is both a dealer and a customer of Wick. We do not find it incompatible for one to be both a dealer and a customer, for a customer is a purchaser, buyer or patron. Mel-O-Dee may well be both a customer and a dealer, but even if such a conclusion is reached, it affords no relief to Wick in the instant case since the dealer agreement and assignment agreement clearly contemplated a three-tiered structure, to-wit, manufacturer, dealer and customer, before Bunning became a guarantor for the payment of the balance of any purchase price. The third segment of the structure, namely the ultimate purchaser, is missing in this case and hence Bunning is not liable.

■■ At first blush the result reached appears inequitable and harsh, but upon reflection that feeling is dissipated. All documents involved in this case were drafted and supplied by Wick. In construing such documents they must be construed liberally in favor of the nondrafting party. (*Weiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105, 251 N.E.2d 242.) The brief of Wick calls attention to the fact that Bunning is the sole shareholder of Mel-O-Dee Corporation. This fact gave rise to an initial impression that some chicanery was being practiced by Bunning;

however, this impression was dispelled by the record, which shows that Wick was not only aware of the extent of Bunning's interest in Mel-O-Dee, but the assignment agreement consented to by Wick provided Bunning would remain the sole or majority shareholder in Mel-O-Dee during the entire term of the assignment.

Bunning is not escaping liability as the result of legal technicalities, but is found to be free from liability for the indebtedness of Mel-O-Dee as the result of the only reasonable construction possible of the contract in question.

For the reasons set forth the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

STOUDER, J., concurs.

JUSTICE HEIPLE, dissenting:
Wick manufactures prefabricated farm buildings. William Bunning wanted to sell them. Accordingly, he and Wick entered into a contract authorizing Bunning to do so. Later, Mr. Bunning assigned such contract to Mel-O-Dee Builders, Inc. The latter Iowa corporation was wholly owned by Mr. Bunning. In June 1979, Mel-O-Dee ordered a building from Wick. The building cost $14,926 and was delivered and erected. Mel-O-Dee did not pay for it. In March 1980, Wick filed a four-count complaint in Peoria County against Mel-O-Dee and Mr. Bunning. The complaint's first two counts, pertaining to Mel-O-Dee, were dismissed for lack of *in personam* jurisdiction. No appeal was lodged. The remainder of the complaint, seeking to impose personal liability on Mr. Bunning, was dismissed for failure to state a cause of action. Wick appeals.

The issue in this cause is whether Mel-O-Dee's obligation to pay is one arising under the dealer agreement which discharges Bunning from his personal guarantee to pay Mel-O-Dee's debt. If it is, Wick loses: if not, plaintiff wins. Mr. Bunning acknowledges he is personally liable as a guarantor to Wick for unfulfilled obligations of third-party customers of Wick. Bunning says Mel-O-Dee's failure to pay is not a personal obligation he assumed under the assignment agreement. My colleagues have concluded that Mel-O-Dee assumed Bunning's obligations by virtue of the assignment. Thus, Wick should look to Mel-O-Dee for payment. Both these theories are highly technical, strained, and unpersuasive.

Under the dealer agreement Mr. Bunning personally assured Wick that:
"* * * in the event the customer shall fail, or be unable to pay the

full purchase price to Manufacturer \* \* \* then Dealer shall, and hereby does agree to, indemnify, and save harmless Manufacturer \* \* \* and pay to Manufacturer, the balance of the purchase price \* \* \*."

And, when Mr. Bunning assigned the dealer agreement to Mel-O-Dee he did not necessarily release himself from personal liability under the dealer agreement. As assignor, Mr. Bunning,

"\* \* \* agree(d) to remain personally liable and responsible to Manufacturer for the full and complete performance of all the duties, responsibilities, and obligations of Dealer under said agreement, *notwithstanding this Assignment* \* \* \*." (Emphasis added.)

Since Mel-O-Dee acceded to the status of "dealer" under the dealer agreement, the majority says, Bunning was released from personal liability on his original obligation to pay third-party debts. As assignee, Mel-O-Dee acquired all title and interest in the Dealer Agreement. Thus, Mel-O-Dee became the dealer and therein personally liable for defaulting third parties in purchase contracts with Wick. In other words, my colleagues conclude, a novation, or substituted contract, occurred which discharged Bunning from his obligations under the dealer agreement.

Arguably, the dealer agreement and the assignment agreement contain elements of a novation. These include: a valid prior obligation; a subsequent agreement of all parties to a new agreement; discharge of a previous contractual duty; and the validity of a new contract. (*Kiefer v. Reis* (1928), 331 Ill. 38, 43; and see generally J. Calamari and J. Perillo, Contracts sec. 345, at 526-27 (1970).) Novation, however, is an affirmative defense that must be pleaded and proven. Defendant did not follow that procedure. Rather, defendant filed a motion to dismiss the complaint for failure to state a claim. The trial court granted the motion to dismiss. The dismissal order was not only premature, it was improper. The complaint did and does state a cause of action that turns on the claim of plaintiff against defendant based on defendant's personal guarantee. That claim was properly pleaded. The motion to dismiss should have been denied and the defendant ordered to plead over. Had that been done, defendant could have pleaded novation as an affirmative defense, the issues could have been joined and the matter could have proceeded to trial.

Whether the assignment clause discharged Mr. Bunning's personal liability might be resolved either way. But neither resolution could properly be decided as a matter of law on the motion to dismiss. The assignment agreement is without terms which state that upon execution Mr. Bunning's personal liability somehow evaporates or is transferred. In fact, it is unreasonable to assume such assent was contemplated since the language "\* \* \* notwithstanding the assignment \* \* \*" lends itself to the conclusion that Mr. Bunning remained liable regardless of what obliga-

68

tions or duties Mel-O-Dee was assuming. Moreover, it cannot be ignored that, in reality, Mr. Bunning and Mel-O-Dee are one and the same.

The trial judge was wrong in deciding this case against plaintiff on the defendant's motion to dismiss. The matter should be remanded to the trial court so that the issues can be joined and the merits tried. Accordingly, I dissent.