ROBERT USSELMANN *et al.*, Plaintiffs-Appellants, v. ANTHONY H. JANSEN, Defendant-Appellee

Fifth District   No. 5—92—0109

Opinion filed February 9, 1994.

Kathleen Moran, of Trenton, for appellants.

Stephen W. Thomson, Michael J. Bedesky, and Charles C. Compton, all of Reed, Armstrong, Gorman, Coffey, Thomson, Gilbert & Mudge, P.C., of Edwardsville, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:
Plaintiffs, Robert Usselmann and Betty Usselmann, appeal from

a judgment of the circuit court of Clinton County and the court's order denying their post-trial motion for new trial. Plaintiffs filed this action based on injuries Robert Usselmann sustained when he fell at the home of defendant, Anthony H. Jansen. Although the jury returned a verdict for both plaintiffs, it did not award any damages for Robert's pain and suffering, disability, or diminished earning capacity. The jury also awarded no damages to Betty Usselmann on her loss of consortium claim. The jury found Robert to be contributorily negligent in the incident, thus reducing the damages award for medical expenses and lost wages by 50%.

On appeal, plaintiffs contend that: (1) the trial court erred in denying their post-trial motion; (2) the damages award was inadequate and against the manifest weight of the evidence; and (3) the jury's finding that Robert was 50% contributorily negligent is against the manifest weight of the evidence. We affirm in part, reverse in part, and remand.

This action arose after Robert Usselmann fell into a hole at defendant's residence. At the time of the incident on May 19, 1989, defendant, who is plaintiffs' son-in-law, was remodeling his home. Defendant began the project in April 1989, and Robert had participated in the effort on numerous occasions. The hole Robert fell into was cut 7 to 10 days before his fall and was located between two front doors in defendant's home. When plaintiffs arrived at defendant's home on May 19, 1989, Robert saw his brother-in-law, Floyd Kraft, working on the project. Kraft told Robert that defendant had left to go get a tool. Kraft was up on a ladder and asked Robert to go into the house and cut a piece of two-by-four board. At that time Robert entered the house and immediately fell into the uncovered hole. Although Robert was aware of the hole's existence, it had been consistently covered by a piece of plywood until the day of his fall. Robert testified that since the hole had been cut, he had never seen it uncovered until the day he fell. According to all parties, when the plywood cover was over the hole it provided a sturdy floor that the family freely walked upon.

As a result of his fall, Robert suffered from a dislocated left shoulder as well as various cuts and bruises. Robert testified that his shoulder injury was severely painful. He was immediately taken to St. Joseph Hospital in Breese, but the emergency room doctor was unable to replace the ball joint in his shoulder. Robert was then taken by ambulance to Memorial Hospital in Belleville, where an orthopedic surgeon, Dr. Thomas Meirink, set the shoulder while Robert was under general anesthesia. Robert went home from the hospital the next day, but missed eight weeks of work and was unable to lift anything. He began physical therapy two to three times per week

and saw Dr. Anwar Khan, a rehabilitation specialist, two times per month. Robert testified that he was an upholsterer and was unable to perform his job after the injury to his shoulder. Robert also testified that the incident prompted him to retire, even though he had given some thought to retirement before the accident.

Betty Usselmann testified that her husband's personality changed, and he was much more irritable after the injury.

Dr. Khan testified that he saw Robert 13 times over a period of 18 months. The doctor's final analysis was that Robert's left shoulder muscles were slightly weaker compared to the right shoulder muscles and that he still had some deficiency on the left side. Dr. Khan further advised Robert to avoid heavy lifting with the left arm.

Michael Mercurio, director of the physical therapy department at St. Joseph Hospital, testified that he treated Robert and saw him approximately 38 times from June through September 1989. On October 24, 1991, Mercurio gave Robert a muscle evaluation using a computerized muscle tester. The evaluation showed that Robert's left shoulder musculature was weaker than his right and that Robert had difficulty lifting his left arm above shoulder level.

On November 13, 1991, the jury returned a verdict for both plaintiffs. The jury awarded Robert his medical expenses in the amount of $5,255, and it awarded $1,600 in lost wages, but it found him to be 50% contributorily negligent, thus cutting the award in half. The jury awarded Robert no damages for disability, past or future pain and suffering, or damage to earning capacity. The jury also returned a verdict for Betty's loss of consortium claim but awarded her zero damages.

Plaintiffs filed a post-trial motion, which the trial court denied in the following order:

> "Having considered the arguments of counsel on the post-trial motion the court finds the question of facts are for the jury. Counsel for plaintiff presents strong arguments for vacating the judgment and granting a new trial. However, it is clear from hearing the evidence at trial that the jury did not ignore the evidence. It is obvious from the verdict that the jury considered the family relationship between the parties. Without this relationship, the verdict could not stand. Because of the relationship, the verdict can be understood. The court feels the jury could not ignore the evidence but its verdict can reflect a social policy. Therefore, the post-trial motions are denied and the judgment will stand."

In this appeal, plaintiffs first argue that the trial court erred in holding that the jury's verdict could be based solely on social policy. As stated above, in response to plaintiffs' post-trial motion, the trial

court found it obvious that the jury considered the family relationship between the parties, and the court held that without that relationship the verdict could not stand. Defendant argues that the trial court's comments are not an issue for review and that we should examine the judgment itself rather than the statements on the verdict.

■ In order to fully resolve this issue, we find it necessary to determine whether the damages award was inadequate. It is well settled that the question of damages is peculiarly one of fact for the jury, and courts are reluctant to interfere with the discretion of the jury in its assessment of damages. (*Kern v. Uregas Service of West Frankfort, Inc.* (1980), 90 Ill. App. 3d 182, 194-95, 412 N.E.2d 1037, 1047.) A court of review, however, will depart from the general rule where the award is palpably inadequate or a proven element of damages has been ignored, where the amount of the verdict is shown to be erroneous or the result of passion or prejudice, or where it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relationship to the loss suffered by plaintiff. *Kern*, 90 Ill. App. 3d at 195, 412 N.E.2d at 1047.

In the case before us, the jury awarded damages for plaintiffs' proven medical costs and lost wages and cut those awards in half by finding Robert to be 50% contributorily negligent. The jury awarded no pain and suffering damages, even though Robert presented uncontroverted evidence that he suffered a great deal of pain from the injury. The jury awarded nothing for Robert's disability from the injury, despite the uncontroverted expert evidence that Robert's injured left shoulder remains weaker than his right shoulder and that Robert has difficulty raising his left arm above shoulder level. The jury also declined to award plaintiffs damage for reduced earning capacity. Finally, although plaintiffs presented uncontroverted evidence on the loss of consortium claim, the jury awarded zero damages to Betty.

Plaintiffs present us with numerous cases where the courts have reversed damage awards for their inadequacy, and defendant cites numerous cases where the courts have upheld damage awards. Clearly, each case must be analyzed on its specific facts, and therefore we do not find it necessary to discuss the extensive authorities cited by the parties on this issue.

■ In applying the facts to the principle set forth above, we find that the award was palpably inadequate and that the jury ignored a proven element of damages, namely, Robert's past and future pain and suffering. Additionally, the trial judge, the person best able to assess the jury's decision, stated that he thought the jury considered the family relationship between the parties. Such a consideration

constitutes prejudice against plaintiffs. The family relationship between the parties does not immunize defendant against plaintiffs' cause of action and thus should have absolutely no bearing on this case. Furthermore, if the trial judge had reason to believe, as he stated in open court, that the family relationship between plaintiffs and defendant was the sole reason for the jury's low damage award, he was bound, as a matter of law, to grant plaintiffs a new trial on damages. The judge clearly stated: "Without this relationship, the verdict could not stand."

As defendant correctly asserts, a judgment may be sustained if warranted by the record, regardless of whether the reasons given by the trial court were correct. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12; *Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 662, 475 N.E.2d 1327, 1333.) As we stated above, however, we find that the judgment award cannot be sustained by the record. It is apparent from the trial court's comments that it also was inclined to grant plaintiff a new trial on damages, but for the familial relationship between the parties. The standard to be used by a reviewing court in determining the correctness of a circuit court's ruling on a motion for a new trial is whether the trial court abused its discretion or its ruling was against the manifest weight of the evidence. (*Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 144, 357 N.E.2d 500, 502; *Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 243, 476 N.E.2d 427, 434.) We find that the trial court's denial of plaintiff's motion for a new trial is reversible error, because the court abused its discretion in not granting plaintiffs a new trial and the ruling was against the manifest weight of the evidence.

■ We now turn to plaintiffs' contention that the jury's finding that Robert was 50% contributorily negligent is against the manifest weight of the evidence. A jury's finding on the issue of comparative negligence will not be set aside on review absent a finding that the verdict is contrary to the manifest weight of the evidence. (*Rainey v. City of Salem* (1991), 209 Ill. App. 3d 898, 905, 568 N.E.2d 463, 468.) A verdict is against the manifest weight of the evidence where, upon review of all the evidence in the light most favorable to the prevailing party, an opposite conclusion is clearly apparent or the jury's finding is palpably erroneous and wholly unwarranted, is clearly the result of passion or prejudice, or appears to be arbitrary and unsubstantiated by the evidence. *Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 156, 507 N.E.2d 1213, 1227.

■ After a thorough examination of the record, we find that there was some evidence to support a finding that Robert was contributorily

negligent. In light of our earlier conclusion that the jury was prejudiced against plaintiffs because of their familial relationship to defendant, however, we will not uphold the jury's finding of contributory negligence.

For the foregoing reasons, the judgment of the circuit court of Clinton County is affirmed in part and reversed in part, and the cause is remanded for a new trial on the question of damages for both plaintiffs and on the question of contributory negligence.

Affirmed in part; reversed in part and remanded.

WELCH and MAAG, JJ., concur.