(No. 76046.—

WILMA FAY MORRIS, as Independent Ex'r of the Estate of Donald J. Morris, *et al.*, Appellees, v. BANTERRA BANK OF HAMILTON COUNTY *et al.*, Appellants.

*Opinion filed August 4, 1994.—Rehearing denied October 3, 1994.*

BILANDIC, C.J., dissenting.

James V. O'Brien and Eric D. Paulsrud, of Lewis, Rice & Fingersh, of St. Louis, Missouri, for appellants.

Charles E. Jones, of McLeansboro, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

The substantive merits of this case are wholly immaterial to the narrow procedural issue which it presents. Plaintiffs, the appellees herein, filed a section 2—615 motion for judgment on the pleadings (Ill. Rev. Stat. 1991, ch. 110, par. 2—615). The trial court did not agree. Apparently frustrated by the court's ruling and unwilling to go forward with its proofs, plaintiffs alternatively and successfully moved that judgment be entered for the *defendants*. The only rationale for this procedure was the plaintiffs' apparent hope that the matter could then be taken up on appeal.

On appeal, the appellate court found that the circuit court correctly denied the plaintiffs' motion for judgment on the pleadings in its behalf. The appellate court held, however, that the trial court erred in granting the alternative motion and entering judgment in favor of defendants, finding that "it was not the intention of the plaintiffs to terminate the litigation when they made their alternative motion; that plaintiffs intended to circumvent the trial court's denial of their section 2—615 motion and seek appellate review of that denial." The appellate court went on to find that the judgment on the pleadings on behalf of defendants was premature and ordered the cause remanded to the circuit court (No. 5—92—0452 (unpublished order under Supreme Court Rule 23)).

It is well settled in this State that "a party cannot claim error when it induced the trial judge's mistake." (*J.L. Simmons Co., Inc. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106.) In this case, plaintiffs induced the circuit court to enter a judgment in favor of defendants. While this judgment may arguably have been premature and thus improper, the party inducing the error must bear its consequences.

Plaintiffs contend that they do not complain of an error by the trial court. They contend, in fact, that it was *not* error for the trial court to enter judgment in response to plaintiffs' motion. They maintain that "[t]he judgment moved the case along by permitting an appeal. There was nothing further to be done in the trial court." We disagree.

The only appealable order in this case was the judgment in favor of defendants. If plaintiffs do not contend that this judgment was in error, they have nothing to appeal. The fact that plaintiffs intended to use the alternative motion only to effect an end run to gain review of an unreviewable interlocutory order is of importance only in the plaintiffs' minds. The plaintiffs' motivation, hope, or expectation for this procedural maneuver is beside the point.

We hold that a party who requests the trial court to enter a judgment in favor of the opposing party cannot later claim error and appeal that judgment. The judgment of the appellate court is accordingly reversed and the judgment of the circuit court is reinstated.

Given our disposition of defendants' appeal, we do not reach the issues raised by plaintiffs on cross-appeal.

*Appellate court reversed;*
*circuit court affirmed.*

CHIEF JUSTICE BILANDIC, dissenting:

The majority exalts form over substance, disregards the policy and purpose of modern civil procedure, and by means of legal prestidigitation, denies the plaintiffs the opportunity to be heard. The majority's flawed reasoning compels me to voice my dissent.

The plaintiffs filed a complaint in the circuit court of Hamilton County against the defendant Bank and its directors, alleging the following facts. Before November 21, 1989, the plaintiffs owned 85 shares of capital stock in the Banterra Bank of Hamilton County. At that time,

3,000 capital shares were outstanding, making the plaintiffs minority shareholders with a 3% interest in the Bank. Banterra Corporation, which is not a party in this case, owned 2,491 shares of stock (83%), and the officers and directors of the Bank owned 424 shares (14%).

On October 11, 1989, the Bank gave notice that a shareholders meeting would be conducted on November 15, 1989, to vote on a proposal to amend the Bank's charter. The proposed amendment would reduce the number of outstanding shares from 3,000 to 34 shares, and would abolish any fractional shares. Along with the notice, the Bank sent a proxy statement that described the manner in which the Bank would execute the proposed amendment. According to the proxy statement, the number of shares would be reduced pursuant to a reverse stock split. As a result of the stock split, only the plaintiff shareholders would own a fraction of one share (less than one share) of common stock. The proposed amendment required these fractional shareholders to present their stock for redemption, thereby eliminating the fractional shares. In exchange, upon redemption, the owners would be paid cash for their fractional shares. The proxy statement explained that the purpose of the reverse stock split was to reduce the number of shareholders and to consolidate ownership of stock in the Banterra Corporation. The proxy statement also explained that, after the fractional shares were eliminated, the number of capital shares would then be restored to 3,000 shares.

The plaintiffs filed objections to the proposed amendment, which would effectively squeeze out the minority shareholders and deprive them of their equity ownership in the Bank. Notwithstanding the plaintiffs' objections, the proposal to amend the charter was adopted by the majority shareholders. The Bank carried out the reverse

stock split and advised the plaintiffs to surrender their outstanding fractional shares and receive cash in lieu of those shares. The plaintiffs' shares were then abolished. On November 22, 1989, the remaining shareholders adopted another resolution reestablishing the number of shares in the Bank at the original 3,000 shares.

The plaintiffs' first complaint contained three counts. Count I alleged that the defendants breached their fiduciary duty to the plaintiffs. Count II alleged that the defendants' actions were motivated by bad faith, rather than a valid corporate purpose. Count III alleged that the defendants' actions violated the Illinois Banking Act and other statutes. In their second-amended complaint, upon which this appeal is based, the plaintiffs abandoned both the fiduciary-duty count and the bad-faith count. The complaint alleged only that the Bank's actions were illegal and contrary to common law and the Banking Act.

Specifically, the complaint alleged that, as a result of the freeze-out maneuver, the plaintiffs' shares vested either in the Bank as treasury stock or in another shareholder of the Bank (Banterra Corporation). The complaint further alleged that either alternative was contrary to the Banking Act, unauthorized and void. The complaint alleged that, although the Banking Act permits a bank to acquire shares of its own stock to hold as treasury stock, the defendants failed to follow the procedures laid out in that statute for acquiring treasury stock. The complaint alleged that the plaintiffs' shares therefore did not vest in the Bank as treasury stock. The complaint alleged that, instead, the defendants acquired the plaintiffs' shares solely for the benefit of another stockholder, in violation of particular sections of the Banking Act. The complaint alleged that the Banterra Corporation, another shareholder of the Bank, acquired *all* of the plaintiffs' shares. As support

for these allegations, the complaint referred to the proxy statement, which stated that the Banterra Corporation would give the Bank cash to pay the minority shareholders for their fractional shares, and in return, the Bank would issue additional shares of stock to the Banterra Corporation. The complaint alleged that the freeze-out maneuver, which ultimately resulted in one shareholder (Banterra Corporation) obtaining the plaintiffs' shares of stock, violated the Banking Act. The complaint sought injunctive relief and costs. The plaintiffs attached various exhibits to their complaint that described the procedure the Bank followed to deprive the plaintiffs of their shares of stock.

The defendants filed an answer to the plaintiffs' second-amended complaint, admitting many of the allegations of the complaint, but denying those allegations that contended that the Bank's actions were illegal. In their answer, the defendants also alleged that the plaintiffs' complaint failed to state a claim upon which relief may be granted and prayed that the complaint be dismissed with prejudice and that judgment be entered in favor of the defendants and against the plaintiffs.

The plaintiffs subsequently moved for judgment on the pleadings (735 ILCS 5/2—615 (West 1992)), based on the admissions contained in the defendants' answer. The trial court denied the motion, finding that an evidentiary hearing was needed. The plaintiffs then filed a motion to reconsider the order denying the motion for judgment on the pleadings. The plaintiffs also filed an alternative motion, informing the court that they had no additional evidence to present in support of their suit, other than the exhibits already attached to their complaint and the defendants' admissions contained in their answer to the complaint. The plaintiffs' alternative

motion asked the trial court to consider entering a final order dismissing the plaintiffs' amended complaint with prejudice, if the court denied the motion to reconsider. Because the plaintiffs had no additional evidence to present before the circuit court, they sought a final judgment of dismissal for the purpose of ending the litigation in the circuit court and permitting an immediate appeal. The circuit court denied the motion to reconsider but granted the alternative motion and entered judgment in favor of the defendants.

I

The majority concludes that, since the plaintiffs asked the trial court to enter judgment for the defendants, with prejudice, they are barred from asking a reviewing court to consider the legality of the defendants' alleged misconduct. The plaintiffs did not confess judgment and waive their right to appeal, as the majority would lead us to believe.

The plaintiffs did not choose to sell their stock in the Bank. The Bank, through the majority shareholders, targeted the plaintiffs' shares for extermination. In seven days (November 15 to November 22, 1989), the plaintiffs' shares were involuntarily converted from the plaintiffs and transferred to the Banterra Corporation (the majority shareholder). Other minority shareholders (the officers and directors) were permitted to continue as minority shareholders. As the chart below demonstrates, on November 15, 1989, the Bank had 3,000 shares outstanding. On November 22, 1989, the Bank still had 3,000 shares outstanding. It still had the defendant officers and directors as minority shareholders and the Banterra Corporation as the majority shareholder. The disappearance of the plaintiffs from the corporate scene is the real issue that this court must consider.

| Shareholders | Outstanding shares | |
|---|---|---|
| | Nov. 15 | Nov. 22 |
| Banterra Corporation | 2,491 | 2,648 |
| Officers and Directors | 424 | 352 |
| Plaintiffs | 85 | 0 |
| | 3,000 | 3,000 |

As in other democratic organizations, the majority of corporate shareholders have the power to control the affairs of the corporation. However, this power does not give the majority the right to oppress the minority. The plaintiffs here were justly outraged by the defendants' oppressive actions, and sought immediate injunctive relief to avoid the irreparable damage they would suffer if the defendants' plan to exterminate their shares succeeded.

The plaintiffs rationally believed that the allegations in the complaint, when considered in conjunction with the proxy statement and the defendants' admissions, amply demonstrated that another shareholder of the Bank (the Banterra Corporation) acquired ownership of the plaintiffs' shares in the freeze-out maneuver, and that no other inference or conclusion was possible. The plaintiffs further argued that the trial court was faced only with a question of law, that is, whether the defendants' actions violated the Banking Act or whether those actions were somehow authorized by statutes or common law. The trial court disagreed with the plaintiffs' position that the facts alleged in the complaint and the exhibits attached thereto established a valid cause of action against the defendants. Accordingly, the trial court dismissed the plaintiffs' complaint.

Now the plaintiffs simply want to obtain their statutory right to review of the trial court's judgment on the merits. They do not want another opportunity to present additional evidence in the trial court. Rather, they continue to make the same argument that they

made before both the trial and the appellate courts, that is, that they are entitled to a judgment in their favor as a matter of law, based upon the facts alleged in the complaint and the exhibits attached thereto.

The majority nevertheless concludes that the plaintiffs are not entitled to a review of their claim on the merits, because the plaintiffs asked the trial court to enter a final judgment, thereby permitting an immediate appeal. The majority's reasoning is flawed in several respects.

First, the majority completely ignores the fact that the *defendants* also specifically asked the trial court to dismiss the plaintiffs' complaint and enter judgment in their favor. The defendants' answer to the second-amended complaint states, in pertinent part:

"Count I fails to state a claim upon which relief can be granted.

WHEREFORE, defendants pray that Count I of the plaintiffs' Second Amended Complaint be dismissed with prejudice, that judgment be entered in favor of defendants and against plaintiffs, and that defendants be awarded such further relief as the Court deems appropriate in the circumstances."

The plaintiffs' alternative motion may be construed, therefore, as simply a request that the trial court act upon the *defendants'* prior request for a judgment in their favor.

Second, even if the plaintiffs' request for a final judgment is considered, the majority's conclusion that the plaintiffs are not entitled to a review on the merits is contrary to case law and to common sense. The facts of this case are analogous to those in innumerable cases where the trial court concludes that a plaintiff's complaint fails to state a cause of action and dismisses the complaint with leave to amend. Such an order, like the trial court's order denying judgment on the pleadings in this case, is not final, and, thus, not appealable. (See,

*e.g., County of Knox v. Switzer* (1987), 151 Ill. App. 3d 873; *Wick Building Systems, Inc. v. Bunning* (1982), 107 Ill. App. 3d 61.) Our cases have held that when such an interlocutory order is entered, the plaintiff may seek an order dismissing the complaint with prejudice, as a means of obtaining a final, appealable judgment. (See, *e.g., Miller v. Suburban Medical Center at Hoffman Estates, Inc.* (1989), 184 Ill. App. 3d 545; *Schoen v. Caterpillar Tractor Co.* (1966), 77 Ill. App. 2d 315.) This court has never held that a plaintiff who elects to stand on an unamended complaint must wait patiently for the *defendant* to seek an order dismissing the plaintiff's complaint with prejudice. If such a rule was adopted, the plaintiff's action would languish indefinitely in the trial court, and the defendant would obtain a significant benefit by his or her inaction.

The cases discussed above, where a plaintiff elects to stand on an unamended complaint and seeks dismissal of that complaint with prejudice, are no different procedurally from the one now before us. In such cases, the trial court enters an interlocutory order dismissing the plaintiff's complaint and informs the plaintiff that he or she must amend the complaint by pleading additional facts or allegations to state a cause of action. When the plaintiff informs the trial court that there are no additional facts or allegations to plead, the trial court enters an order dismissing the complaint with prejudice. On appeal, the plaintiff does not contest the order dismissing the complaint. Rather, the plaintiff claims that the trial court erred in concluding that the complaint was insufficient and that additional facts and allegations were necessary to state a cause of action.

Similarly, the trial court here refused the plaintiffs' request for judgment on the pleadings and insisted that the plaintiffs present additional evidence at an evidentiary hearing. In their motion to reconsider, the plain-

tiffs informed the trial court that they had no additional evidence to present. They informed the court that the only evidence they could offer in support of their suit was the complaint itself, the exhibits attached thereto, and the defendants' answer admitting allegations in the complaint. When the trial court learned that the plaintiffs had no additional evidence to present, it entered an order dismissing the complaint with prejudice. The trial court's order stated, in pertinent part:

> "It appearing from plaintiffs' motion that they have no evidence to present in support of their case other than the exhibits attached to their Second Amended Complaint and defendants' admissions thereto. *It further appearing that on the basis of plaintiffs' allegations and exhibits in their Second Amended Complaint, without more, that plaintiffs are not entitled to the relief sought.*
>
> It is therefore the decision of the court that judgment is entered against plaintiffs and in favor of defendants, with prejudice, \*\*\*." (Emphasis added.)

The substance of the court's order demonstrates that the trial court dismissed the plaintiffs' complaint, not because the plaintiffs asked it to do so, but because the court believed that the facts stated in the plaintiffs' complaint and the exhibits attached thereto, standing alone, did not warrant the relief sought.

The majority concludes that the plaintiffs may not appeal from the trial court's judgment, because they do not complain that the trial court erred in entering judgment for the defendants. In fact, however, the plaintiffs claim that the trial court erred in concluding that additional evidence was necessary to sustain their complaint. The plaintiffs continue to argue, as they did in both the trial and the appellate courts, that the facts alleged establish, as a matter of law, that the defendants' freeze-out maneuver violated the Illinois Banking Act. Because they had no additional evidence to present in support of this claim, the plaintiffs had no choice but to

seek the entry of a final order as a necessary means of obtaining appellate review of the trial court's error.

## II

The majority opinion stands in direct opposition to the policy expressed in our Code of Civil Procedure, which states:

> "This Act shall be liberally construed, to the end that controversies may be speedily and finally determined according to the *substantive rights* of the parties." (Emphasis added.) (735 ILCS 5/1—106 (West 1992).)

The majority thwarts this policy, exalts form over substance, and relies upon procedural technicalities to deprive the plaintiffs of a hearing on the merits of their appeal. It is evident that we should, within the spirit and the letter of the law, determine the merits of the plaintiffs' cross-appeal. I believe that justice requires us to address the question of law raised in the plaintiffs' cross-appeal. Accordingly, I dissent from the majority's decision.