SHEILA JACOBS, Special Adm'x of the Estate of Gary L. Jacobs, Deceased, *et al.*, Plaintiffs-Appellees, v. UNION PACIFIC RAILROAD COMPANY, Defendant-Appellant.

Fifth District    No. 5—96—0548

Opinion filed July 17, 1997.

GOLDENHERSH, J., dissenting.

Thomas E. Jones, James C. Cook, and John E. Sabo, all of Walker & Williams, P.C., of Belleville, for appellant.

Patrick M. Young and J. Michael Weilmuenster, both of Kassly, Bone, Dix, Young, English & Weilmuenster, P.C., of Belleville, for appellees.

JUSTICE MAAG delivered the opinion of the court:

The defendant, Union Pacific Railroad Company, appeals from a circuit court order granting a new trial to plaintiff under Rule 306(a)(1) (155 Ill. 2d R. 306(a)(1)). We reverse.

In March 1992, Gary Jacobs and his minor son, Benjamin, were driving their pickup truck to market with a trailer of hogs in tow. Upon crossing a railroad grade intersection in Shelby County, the truck collided with defendant's train. Gary Jacobs died as a result of injuries sustained in the accident.

Gary Jacobs' surviving spouse, Sheila Jacobs, filed suit on behalf of herself, the estate of Gary Jacobs, and the couple's son as next friend (collectively referred to as plaintiff).

Prior to trial, defendant filed a petition for substitution of judge for cause pursuant to section 2—1001(a)(3) of the Code of Civil Procedure (735 ILCS 5/2—1001(a)(3) (West Supp. 1993)). Defendant's request was based upon remarks made by Judge Lopinot in March 1994, during the trial of a previous, unrelated case in which Union Pacific Railroad Company was a defendant. In that previous case, Judge Lopinot remarked on the record that he had "no great love" for Union Pacific Railroad, that Union Pacific "has not been too clean in my courtroom," that he considered Union Pacific to be a "whore," and that he was determined to give the plaintiff in that case a fair trial. The motion was referred to Judge James Donovan for hearing. Judge Donovan denied the motion.

At trial, deputy sheriff Donald Koonce testified regarding his investigation of the collision. Koonce explained that he had prepared two diagrams of the accident scene, one on the date of the collision and another the next day. The latter diagram depicted a more accurate measurement of the skid marks made by Gary Jacobs' pickup truck, according to Koonce, because the wreckage on the day of the accident obscured the view of a portion of the skid marks. Specifically, the first drawing showed the marks to be 10 feet long. When remeasured the following day, Koonce found the marks to be 18 feet long. Koonce testified that the second drawing showing 18-foot marks was correct and the first drawing was wrong.

David Youngberg, a certified accident-reconstruction expert, testified for the defense regarding Gary Jacobs' opportunity to avoid the collision. Youngberg testified that he had based his opinion regarding the skid marks upon the initial, inaccurate drawing prepared by Officer Koonce. Youngberg then sought to alter his prior deposition

testimony and express opinions with regard to the 18-foot skid marks. The plaintiff objected to Youngberg's entire testimony and moved to strike it from the record. Plaintiff also asked that the jury be told to disregard Youngberg's testimony. The court granted the motion. Plaintiff at no time objected to the court's order or its instruction to the jury.

Later, during closing argument, in response to previous suggestions that plaintiff had employed high-priced experts to testify on her behalf, plaintiff's counsel declared:

"What have you heard in this case? Well, you've heard much—much harangue from Mr. Jones that Mr. Weilmuenster and I have gone out and hired two of the best experts that money can buy. And there's no question experts are expensive when you have Ph.D.'s and you have professors coming in from universities, who have their own consulting businesses on the side, who are acknowledged [as] the most finest [sic] experts in this state and possibly in this country on railroad grade safety crossings, railroad crossings—railroad grade cross—crossing safety and economics."

Defense counsel, in closing argument, thereby responded:

"And Mr. Young says, well, he brought in two of the best experts that money can buy. Well, money shouldn't buy justice. It's not a matter of how—how much money you pay somebody. And the judge will tell you in the instructions, he will tell you that the evaluation and the credibility of any witness is for you to determine. And one of the issues you can decide in deciding credibility is the witnesses' financial motive or financial interest that they have when they come and take the stand.

So I'd suggest to you that you consider that fact when you consider the testimony of these witnesses that came in and were paid substantial sums of money to come in and testify. Do they have a financial interest? By all means, they have a financial interest and you heard what that was, and it was a significant financial interest."

Plaintiff did not object to these statements in defense counsel's closing argument.

The jury returned a verdict for the defendant on all counts of plaintiff's complaint.

Plaintiff filed a posttrial motion requesting judgment *n.o.v.* or a new trial. The court granted plaintiff's request for a new trial, reasoning that plaintiff had been severely prejudiced by the testimony of defendant's expert, which was based on the inaccurate drawing, as well as by subsequent remarks made by defense counsel during closing argument.

Defendant appeals the order granting plaintiff a new trial. Specifically, defendant argues:

1. Plaintiff was not unfairly prejudiced by the trial court's order barring the testimony of defendant's expert, David Youngberg, and instruction that the jury ignore testimony given by Youngberg;

2. Plaintiff's own closing argument speaking to plaintiff having hired "two of the best experts that money can buy" opened the door to fair reply by defendant that "money should not buy justice" and that the jurors should consider the witnesses' credibility themselves;

3. Plaintiff waived the issue of prejudicial remarks by defendant during closing argument, by failing to object to the remarks at trial; and

4. The court's order granting a new trial was motivated by its admitted bias and prejudice against defendant Union Pacific Railroad and its attorneys.

■ The standard of review when considering a circuit court's ruling on a motion for a new trial is abuse of discretion. *Usselmann v. Jansen*, 257 Ill. App. 3d 978, 982, 629 N.E.2d 193, 196 (1994).

■ Plaintiff's contention that she was prejudiced by the testimony of Youngberg is without merit. The record indicates that plaintiff's counsel had questioned Youngberg about the 10-foot skid marks during his discovery deposition. Moreover, plaintiff's counsel explained to the jury himself in opening statement that he expected Youngberg to base his opinion testimony upon the original drawing showing 10-foot skid marks. With this in mind, we cannot conclude that plaintiff was in any way surprised by Youngberg's testimony at trial concerning the original drawing. To the contrary, it was expected. With respect to testimony regarding the 18-foot skid marks, the plaintiff objected and the court granted the relief requested.

Plaintiff complains of prejudice as a result of the court ultimately barring Youngberg from testifying and as a result of the court instructing the jury to disregard the testimony Youngberg had already given. Plaintiff argues that she was consequently denied the opportunity to question Youngberg regarding his reliance on the 10-foot skid marks.

We find plaintiff's contention to be interesting. Plaintiff, after all, went to trial with her eyes wide open regarding the basis of Youngberg's testimony. Plaintiff's strategy apparently embodied a hope that Youngberg's opinion would be based on a false assumption. Plaintiff later asked the court to have Youngberg barred and his testimony stricken. Plaintiffs should be more careful of what they ask for—they might get it! A party may not request relief in the trial court and then complain in posttrial proceedings about getting it. *Morris v. Banterra Bank*, 159 Ill. 2d 551, 640 N.E.2d 932 (1994).

The dissent characterizes this situation as putting plaintiff on the "sharp horn of this dilemma." This eloquent locution simply misses the point. Plaintiff's posttrial motion claimed that error occurred because the testimony by Youngberg was stricken and he was barred from testifying any further. The trial court's order found prejudice to the plaintiff because the testimony of Youngberg was barred. In this court, plaintiff complains of prejudice because she lost the chance to cross-examine Youngberg and because his testimony was stricken. No amount of judicial legerdemain can change the fact that PLAINTIFF GOT EXACTLY WHAT SHE ASKED FOR. If she wanted to cross-examine Youngberg, she should not have asked to have him barred. If she did not want his testimony stricken, she should not have asked to have it stricken. The dissent claims that the Rule 220 (134 Ill. 2d R. 220) sanctions and the new-trial order are not mutually exclusive. This is sophistry. The new-trial order was *predicated* on the Rule 220 sanctions. The new trial was not granted because a Rule 220 *violation* by defendant caused prejudice to the plaintiff. It was granted because the Rule 220 *sanctions* imposed at plaintiff's request allegedly caused the prejudice. In other words, the claimed prejudice was caused by the sanction requested by the plaintiff, not by the defendant's Rule 220 violation.

The plaintiff and the dissent do not like the jury's verdict, but they and we must respect it. To do otherwise makes a mockery of our system.

■ The second ground upon which plaintiff's new-trial order was based was defense counsel's remarks during closing argument. The issue is waived. " 'A party cannot sit on his hands and let perceived errors into the record and complain of those errors for the first time in a post[ ]trial motion.' [Citation.] Failure to make a timely objection at trial to alleged errors in an opponent's closing argument is considered a waiver of the objection." *Ellington v. Bilsel*, 255 Ill. App. 3d 233, 238, 626 N.E.2d 386, 389 (1993).

Even if we assume that plaintiff had made a contemporaneous objection to defendant's closing remarks, we nevertheless find that the complained-of comments were proper.

Plaintiff takes issue with defense counsel's remarks which referred to plaintiff's experts as "the best experts money can buy" and suggested that the experts were biased by their financial interest in plaintiff's position. Defense counsel further remarked that "money shouldn't buy justice." For her contention that such remarks were inflammatory and unduly prejudiced the jury, plaintiff relies on the "hired gun" line of cases. *Regan v. Vizza*, 65 Ill. App. 3d 50, 382 N.E.2d 409 (1978) (awarding plaintiff new trial on appeal in light of

defendant's closing remarks comparing plaintiff's medical expert to "a hired gun in the old west" not unlike the television character "Paladin," whose motto was "Have Gun Will Travel"); *Cecil v. Gibson*, 37 Ill. App. 3d 710, 346 N.E.2d 448 (1976) (reversing judgment for defendant based on defense counsel's remarks in closing argument describing plaintiff's attorney as a "slick attorney from Chicago," and a "slick hired hand," while referring to plaintiff's medical expert witness as a "professional witness" who was essentially a sidekick to plaintiff's attorney, not unlike the "Cisco Kid and Poncho," or "Matt Dillon and Chester").

This court has previously had occasion to part ways with those cases. *Moore v. Centreville Township Hospital*, 246 Ill. App. 3d 579, 590-94, 616 N.E.2d 1321, 1330-32 (1993), *rev'd in part on other grounds*, 158 Ill. 2d 543, 634 N.E.2d 1102 (1994); *Ellington v. Bilsel*, 255 Ill. App. 3d 233, 240, 626 N.E.2d 386, 389-91 (1993). Expert witnesses, we have recognized, are " 'hired partisans and in judging their testimony the jury is entitled to know whence they came.' " *Moore*, 246 Ill. App. 3d at 592, 616 N.E.2d at 1331, quoting *Sears v. Rutishauser*, 117 Ill. App. 3d 61, 68, 453 N.E.2d 1, 5-6 (1983) (Webber, P.J., concurring in part & dissenting in part), *rev'd*, 102 Ill. 2d 402, 466 N.E.2d 210 (1984). Accordingly, we held that "opposing counsel may argue to the jury that an expert witness is distorting the truth for financial gain or is a professional witness, if evidence supports the argument." *Moore*, 246 Ill. App. 3d at 594, 616 N.E.2d at 1332.

In the instant case, the record supports the propriety of defense counsel's remarks regarding the financial interest of plaintiff's experts. We therefore conclude that plaintiff was not unduly prejudiced by defendant's closing argument and that the trial court abused its discretion in granting plaintiff a new trial on that basis.

■ Finally, defendant contends on appeal that Judge Lopinot was prejudiced against Union Pacific Railroad, as evidenced by critical remarks made by Judge Lopinot in a previous, unrelated case involving Union Pacific.

Under Illinois law, a petition for substitution of judge for cause shall be heard by "a judge other than the judge named in the petition." 735 ILCS 5/2—1001(a)(3)(iii) (West Supp. 1993).

Here, defendant's petition was referred to Judge Donovan, who found no bias. A reviewing court will not reverse a determination on allegations of judicial prejudice unless the finding is contrary to the manifest weight of the evidence. *In re Marriage of Schweihs*, 272 Ill. App. 3d 653, 658, 650 N.E.2d 569, 573 (1995).

We find that Judge Donovan's determination was not contrary to the manifest weight of the evidence. While Judge Lopinot's earlier

remarks were intemperate, we cannot say that they indicate a bias that extended to the present case. Trials are difficult. They are difficult for litigants, attorneys, and *judges*. In an ideal world no one would lose his temper. This world is not ideal. At most, the complained-of remarks amount to ill-chosen words during a heated exchange. The record in this case shows that defendant received a fair trial. The fact that we are reversing the new-trial order does not change that fact. Judge Lopinot simply relied on a line of cases that we only recently rejected.

We affirm Judge Donovan's order denying the motion for substitution of judge. We reverse the circuit court's order granting plaintiff a new trial, and we reinstate the jury verdict entered in favor of defendant and enter judgment thereon.

Reversed; judgment entered.

KUEHN, P.J., concurs.

JUSTICE GOLDENHERSH, dissenting:

I respectfully dissent. My difference with the majority focuses on point 1 concerning defendant's expert, David Youngberg.

Plaintiff's argument to this court, sustained by the record, indicates that defendant's expert Youngberg was making measurements and calculations based on an incorrect measurement of 10 feet of skid marks. His discovery pursuant to former Rule 220 indicated his conclusions and the basis of those conclusions. Plaintiff apparently relied upon this Rule 220 discovery to the extent that the opening statement in front of the jury indicated that this expert's measurements were incorrect and that, based on his overall approach, if the correct skid-mark measurements had been used, defendant's expert would have conclusions very similar to those of plaintiff's expert. In the course of his testimony, however, Youngberg proffered a new theory not available for discovery that involved 18 feet and essentially a theory of overlapping. This testimony was objected to by plaintiff. It was this undiscovered new material from defendant's expert that resulted in the trial court granting plaintiff's motion to bar further testimony as a Rule 220 sanction. This sanction was unquestionably within the discretion of the trial court, for defendant had not disclosed the information. *Sohaey v. Van Cura*, 158 Ill. 2d 375, 634 N.E.2d 707 (1994). It is also within the discretion of the trial court to determine whether the cumulative result of plaintiff's opening statement concerning the testimony of defendant's expert, the abbreviated testimony of that expert on the stand, and

the barring of that expert for a Rule 220 violation resulting in no opportunity for plaintiff to show, as suggested in his opening statement, that the figures of the two experts were actually similar cumulatively caused prejudicial error to the plaintiff, requiring a new trial. Defendant has not suggested in his brief or cited this court to any authority that the imposition of a Rule 220 sanction and the granting of a new trial are mutually exclusive actions by a trial court or that a trial court must choose between the two when faced with a situation similar to that in the instant case.

The record clearly reflects that plaintiff in opening statement said that defendant's expert Youngberg had relied upon inaccurate figures as far as skid marks of 10 feet rather than 18 feet and that if said expert had used the appropriate number, the calculations of the two experts would be similar. The suggestion to the jury by plaintiff was not rebutted or commented upon by defendant in opening statement. What triggered plaintiff's counsel's response and motion to bar under Rule 220 was the following testimony given by defendant's expert:

> "In the course of—of analyzing braking behavior for vehicles, and based upon my reconstruction experience, I realized I had an 18-foot skid mark, but I also realized that that's not indicative of stopping distance. And one of the reasons is because vehicles have what you call overlap when they stop. When both front wheels and back wheels are skidding, the back wheels are going to lay down marks just the same as the front wheels and you have overlap and that—and so if you have an 18-foot skid, that's not indicative of an 18-foot stopping distance."

At this point plaintiff's counsel objected. The subsequent colloquy between counsel and the court outside the presence of the jury indicated that the theory of overlap, and integrating 18-foot skid marks into this theory, had never been disclosed to plaintiff as part of the Rule 220 discovery.

At this point plaintiff's counsel was faced with a dilemma; should he attempt in cross-examination to overcome this new theory of overlap with this belatedly recognized figure of 18-foot skid marks and attempt to bring defendant's expert in the vicinity of plaintiff's own expert's conclusions, or should plaintiff's counsel conclude that with this newly disclosed theory of overlap now integrating 18-foot skid marks, defendant's expert was predestined to come to conclusions different than plaintiff's expert and the best route for damage control would be to attempt to bar the expert entirely on the basis of the Rule 220 violation? It appears from the record that neither sharp horn of this dilemma was of plaintiff's own making. Defendant argues

that it does not have to acquiesce in an ambush of its own expert witness, and I completely agree. If the means by which defendant intends to prevent ambush is the introduction of a new, previously undisclosed theory which explains or reconciles an apparent conflict in the facts, the appropriate way to proceed is to disclose this new material or theory as soon as practicable pursuant to the former Rule 220. Testimony on the witness stand before the jury is not as soon as practicable.

The trial court was certainly in a better position than this court to determine whether plaintiff was unduly prejudiced by this course of events concerning defendant's expert. A review of the record shows that the court's conclusion that such prejudice occurred has support in the record, and accordingly, the trial court's decision to grant a new trial was not an abuse of its discretion. I therefore respectfully dissent.