HAROLD WRIGHT, Plaintiff-Appellant, *v.* ABBOTT CAPITAL CORPORATION *et al.*, Defendants-Appellees.

First District (5th Division)   No. 79-355

Opinion filed December 28, 1979.

James S. Gordon and Edward Slovick, both of Chicago, for appellant.

Arthur M. Solomon and Vito M. Evola, both of Chicago, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff brought a derivative suit on behalf of an Illinois corporation against defendants which sought to impose a constructive trust on certain assets held by defendants in addition to money damages. On motion by defendants, plaintiff's third amended complaint was stricken and the cause dismissed pursuant to sections 45 and 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 45 and 48) on the ground that plaintiff had been divested of title to the assets as a result of his prior adjudication in bankruptcy and thereby had no standing to maintain the action. On appeal plaintiff contends that he has standing to maintain the action since title to the assets was not divested as a result of his prior adjudication in bankruptcy in the absence of the appointment of a trustee. We affirm the judgment of the trial court. The pertinent facts follow.

On March 1, 1977, plaintiff, Harold Wright, filed a derivative suit on behalf of T-O-W Industries, Inc. (T-O-W), an Illinois corporation, against the following corporate defendants: Abbott Capital Corporation; Adams Street Capital, Inc.; Capital Enterprises, Inc.; Small Business Management Investors, Inc.; and T-O-W. Other defendants included Richard E. Lassar, Mort Malis, Morris Weiser, Kenneth J. Eaton and Michael A. Silverman, who were agents of the corporate defendants.

Count I of the complaint alleged that on August 27, 1973, T-O-W and the corporate defendants, along with one additional lender, entered into a loan agreement whereby T-O-W borrowed $125,000, of which $115,000 was loaned by the corporate defendants. The repayment period was for five years, with interest at 10% per annum. All lenders were granted a first lien on all T-O-W assets, and the loan was personally guaranteed by plaintiff. Also pursuant to the loan agreement, plaintiff entered into a voting trust agreement with defendants Lassar, Malis, and Weiser, whereby plaintiff conveyed 50 shares of T-O-W common stock to defendants as trustees and plaintiff was issued a voting trust certificate. The agreement was to terminate in 10 years or upon the date when the principal and interest due under the loan agreement were paid, whichever event occurred first.

Subsequent to the execution of the loan and voting trust agreements, defendants Eaton, Lassar, and Silverman were elected as directors of T-O-W. Plaintiff was the fourth director. Thereafter, the corporate

defendants were the record owners of all the outstanding shares of T-O-W, held exclusive voting rights, constituted a majority of the board of directors, and exercised complete control over the business and affairs of T-O-W.

Count I further alleged that by March 31, 1975, T-O-W had incurred an accumulated deficit exceeding $90,000 and by May 12, defendants had caused T-O-W to default under the loan agreement. On May 27 defendants dismissed plaintiff as president of T-O-W. During a directors' meeting held on January 13, 1976, of which plaintiff received no notice, defendants authorized the corporation to make an assignment for the benefit of creditors. Defendants then organized Temp-Tech, Inc., for the purpose of purchasing all the assets of T-O-W at a purchase price of $7,500. The remaining portion of count I alleged, in essence, that Temp-Tech is merely an alter ego of defendants and was created for the sole purpose of appropriating plaintiff's equity in the assets of T-O-W, and that such conduct by defendants constituted a breach of fiduciary duty and a constructive fraud against plaintiff. The prayer for relief sought to impose a constructive trust on all the outstanding shares of Temp-Tech stock for the benefit of plaintiff.

Count II alleged that on August 27, 1973, plaintiff and T-O-W entered into an employment agreement pursuant to which plaintiff was employed as president of the corporation for five years with a base salary of $26,400 per year. During a board meeting held on May 27, 1975, defendants adopted a resolution which terminated the agreement and discharged plaintiff as president, such action constituting a tortious and malicious interference with plaintiff's contractual rights. In conclusion, the prayer for relief sought $85,800 in damages plus interest and costs, in addition to $85,800 in punitive damages.

In response to the complaint, on April 28, 1977, defendants filed a motion to strike the complaint and dismiss the action and an affidavit pursuant to sections 45 and 48 of the Civil Practice Act. The motion alleged that count I of the complaint was insufficient in law in that plaintiff has no standing as a shareholder to maintain the action on behalf of T-O-W. Moreover, as a result of plaintiff's prior adjudication in bankruptcy, any cause of action that may have accrued to him with respect to the allegations in count II now accrues to the benefit of creditors rather than to plaintiff. The attached affidavit specifically stated that the sworn schedules filed by plaintiff in the bankruptcy proceeding revealed no cause of action owned by or accruing to plaintiff, nor any sums of money alleged to be due him under any employment contract. The schedules also reflected that "plaintiff owned no liquidated or unliquidated debts or claims, contingent, vested or otherwise." Furthermore, various creditors were scheduled by plaintiff with claims

totalling $816,614.79; however, the bankruptcy court made a finding of "no assets" for distribution to creditors.

On June 20 defendants filed a memorandum of law in support of their motion and the trial court granted the motion on September 15. The complaint was dismissed without prejudice and plaintiff was granted leave to amend. Subsequent to the filing of several amended complaints and corresponding motions to dismiss and memoranda in support therof, the trial court entered a final judgment order on December 21, 1978, dismissing plaintiff's third amended complaint with prejudice on the ground that it was insufficient in law for the reasons set forth in the motion to dismiss and previous filings by defendants. Plaintiff now appeals that order.

OPINION

Plaintiff contends that he has standing to maintain this action on behalf of T-O-W notwithstanding his prior adjudication in bankruptcy. He argues that since no trustee was ever appointed in the bankruptcy proceeding, he was not divested of title to his voting trust certificate in T-O-W and therefore has standing to maintain this action. We cannot agree.

Plaintiff finds dispositive of this issue *Danciger v. Smith* (1928), 276 U.S. 542, 72 L. Ed. 691, 48 S. Ct. 344, where a similar argument was advanced. In that case, plaintiff brought an action to recover certain brokerage commissions allegedly due him from defendants. He assigned part of his claim to his attorneys and the remainder to other creditors as security for antecedent debts, agreeing to prosecute the suit in his name and account to them for the proceeds. Four months later, plaintiff filed a voluntary petition in bankruptcy, in which he failed to schedule this claim. Rather, he stated that he had no assets and that none of his property had been assigned for the benefit of creditors. He was subsequently adjudicated a bankrupt and discharged, with no trustee having been appointed for his estate.

At trial, defendants argued that based on the prior bankruptcy proceeding, plaintiff had ceased to be the owner of the cause of action and was not entitled to prosecute the suit. This argument was rejected, however, and plaintiff recovered judgment which was affirmed on appeal. On *certiorari*, the United States Supreme Court affirmed, holding that an adjudication in bankruptcy, until followed by the appointment of a trustee, did not divest plaintiff's title to the cause of action nor prevent him from maintaining suit thereon.

■■ Upon a review of the record before us, we conclude that *Danciger* is distinguishable on its facts and therefore inapplicable to the present case. Here, the voting trust certificate was in plaintiff's name and as such should

have been appropriately scheduled as an asset, in addition to his claim regarding the breach of his employment contract. On the other hand, in *Danciger* plaintiff was merely a nominee as a result of his prior assignment of the claim to his attorneys and other creditors. Under such circumstances, it is reasonable to conclude that the claim need not have been declared since plaintiff no longer held title to it.

■■ ■ Moreover, the mere fact that no trustees were appointed in either case is not a sufficient basis upon which to find that the holding in *Danciger* is controlling here. The well-established principle as set forth in 8 C.J.S. *Bankruptcy* §140(1), at 858-60 (1942) is that:

> "The filing of a petition in bankruptcy whether voluntary or involuntary, is an assertion of the jurisdiction of the bankruptcy court over all the property and assets of the alleged bankrupt with a view to the determination of his status and the settlement and distribution of his estate in the event an adjudication results. * * * [Upon] adjudication, the assets of the bankrupt are regarded as in custodia legis as of the time of the filing of the petition; and, as of such date, the bankruptcy court becomes vested with exclusive jurisdiction over all property of the bankrupt which may be considered a part of his estate, or all property in which the bankrupt has or may claim an interest, or all property in the actual or constructive possession of the bankrupt in which he claims an interest." (See also *In re Crane Sheet Metal Works, Inc.* (N.D. Ala. 1967), 265 F. Supp. 124.)

Based on this principle, plaintiff was divested of title to the assets in question at the time of filing the bankruptcy petition. Thereafter, the bankruptcy court became vested with exclusive jurisdiction of those assets in the absence of a trustee. Furthermore, the fact that certain assets were unscheduled has no bearing on the divestiture of plaintiff's title to those assets. (3 Remington on Bankruptcy §1376, at 225 (1957).) (In conclusion, we submit that a bankrupt who voluntarily omits to schedule an asset may not thereafter assert any claim thereto.) See generally *Moore v. Slonim* (D. Conn. 1977), 426 F. Supp. 524; *Laing v. Fish* (1905), 119 Ill. App. 645.

For the foregoing reasons, we find that plaintiff was divested of title to the assets in question and therefore has no standing to maintain this action on behalf of T-O-W. In light of our disposition, we need not consider the other contentions advanced by plaintiff.

Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.