MICHAEL DAILEY, Plaintiff-Appellant, v. RICHARD SMITH *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—94—4387

Opinion filed September 3, 1997.

William J. Harte, Ltd., of Chicago (William J. Harte, Sylvia A. Sotiras, Joan M. Mannix, and Jerome Green, of counsel), for appellant.

Steven N. Fritzshall, of Chicago, for appellees.

JUSTICE LEAVITT delivered the opinion of the court:

Plaintiff Michael Dailey sued defendants Richard Smith, John Bittner, and their company, Plastic Film Corporation (PFC), for profits allegedly owed plaintiff as a result of an oral partnership agreement with defendants. A jury returned a verdict in favor of plaintiff and against defendants Smith and Bittner for $288,000. The trial court granted defendants' motion for judgment notwithstanding the verdict, and plaintiff now appeals. We affirm.

In July 1982, plaintiff founded Overlay Systems (Overlay), an Illinois corporation, through which he intended to create a line of decorative wall covering designs. Plaintiff's wife, mother-in-law, and a friend were shareholders in plaintiff's corporation. Plaintiff was the president of Overlay and operated the business out of his own home.

Plaintiff alleged that in October 1982, he entered into an oral "partnership" with defendants Smith and Bittner, who ran and operated PFC. Basically, plaintiff alleged that the three "partners" agreed to buy customized vinyl from one party, resell it for profit, and then split the profits in thirds. Plaintiff alleged he never received his share of profits from defendants and that, as a result, he was forced to seek bankruptcy protection.

In September 1986, plaintiff filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. In his bankruptcy petition, plaintiff did not list the instant claim against defendants, and he denied having any interest in any partnership at the time. In June 1988, a "Finding of No Assets" was entered, and the bankruptcy trustee was dismissed.

Plaintiff filed his "Amended Complaint for Accounting and For Other Relief" in this matter in May 1988. Following a trial in February 1994, a jury awarded plaintiff $288,000. Defendants then made a motion for judgment notwithstanding the verdict, arguing, among other things, that plaintiff lacked standing to assert his claims following the bankruptcy action and that he was otherwise judicially estopped from now asserting the claims that he had earlier failed to disclose to the bankruptcy court. The trial court granted defendants' motion.

■ A motion for judgment *non obstante veredicto* (*n.o.v.*) should be granted only where all of the evidence, when viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967); *Chicago Title & Trust Co. v. Brescia*, 285 Ill. App. 3d 671, 679, 676 N.E.2d 230 (1996). We review *de novo* the granting of a judgment *n.o.v. City of Mattoon v. Mentzer*, 282 Ill. App. 3d 628, 633, 668 N.E.2d 601 (1996); *Arellano v. SGL Abrasives*, 246 Ill. App. 3d 1002, 1009, 617 N.E.2d 130 (1993).

■ We agree with the trial court that, under the principles of standing and judicial estoppel, the jury's verdict could not have been allowed to stand. Plaintiff clearly did not have standing to bring the instant claim against defendants, in light of the prior bankruptcy proceedings. The filing of a bankruptcy petition is an assertion of the jurisdiction of the bankruptcy court over all the assets and property of the alleged bankrupt. *Wright v. Abbott Capital Corp.*, 79 Ill. App. 3d 986, 990, 398 N.E.2d 1147 (1979). Section 541 of the Bankruptcy Code broadly defines what property belongs to the bankruptcy estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1986); *Aspling v. Ferrall*, 232 Ill. App. 3d 758, 762, 597 N.E.2d 1221 (1992); *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1343 (7th Cir. 1987). The reach of this section is extensive; section 541 has been found to encompass "every conceivable interest of the debtor, future, non-possessory, contingent, speculative, and derivative." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993). See generally *In re Plunkett*, 23 B.R. 392, 393-94 (Bankr. E.D. Wis. 1982) (explaining the broad

reach of section 541 and Congress' reasons for expansively defining the bankruptcy estate of a debtor). The preceding principles apply regardless of whether the bankruptcy petitioner has scheduled the property or assets. Once a debtor files for bankruptcy, any unliquidated lawsuits become part of the bankruptcy estate, and, even if such claims are scheduled, a debtor is divested of standing to pursue them upon filing his petition. See *Wright*, 79 Ill. App. 3d at 990; *Hammes v. Brumley*, 659 N.E.2d 1021, 1025-26 (Ind. 1995) (holding that in such cases suit must be brought by the bankruptcy trustee).

In *Wright*, the plaintiff brought a derivative suit on behalf of T-O-W Industries against various corporate and individual defendants, including T-O-W. The plaintiff alleged breach of a fiduciary duty and commission of constructive fraud by the defendants, as well as malicious interference with the plaintiff's rights under an employment contract. *Wright*, 79 Ill. App. 3d at 989. The trial court found the plaintiff lacked standing to bring his claims, since he had earlier filed for bankruptcy and had been adjudicated bankrupt. On appeal, the plaintiff did not contest the general proposition that filing a bankruptcy petition relieved him of standing to pursue his claims. Rather, he argued that he did have standing in light of the fact that a trustee was never appointed in the bankruptcy proceedings. *Wright*, 79 Ill. App. 3d at 989. The *Wright* court rejected this contention and held the plaintiff lost his standing to pursue his claims when he petitioned for bankruptcy. The court found, even in the absence of a trustee, that the plaintiff was divested of his interest in the claims, as the claims became *in custodia legis* when the petition was filed. *Wright*, 79 Ill. App. 3d at 990.

Similarly, plaintiff in the present case was divested of standing to pursue his claims against defendants at the moment he filed his petition for bankruptcy in September 1986. Plaintiff does not contest the fact that the claims that he now pursues were in existence at the time he commenced the bankruptcy proceedings—he admits that his claims should have been disclosed but blames his failure to disclose them on his reliance on the advice of his bankruptcy counsel.

Plaintiff's attempt to avoid the standing deficiency by claiming reliance on advice of counsel does not avail him. We first note that plaintiff fell well short of proving that his bankruptcy attorney ever advised him not to disclose the present claims. Although she could not remember plaintiff at trial, plaintiff's former counsel testified that she would have listed plaintiff's "partnership" and claims against defendants on his bankruptcy schedules had she been informed of them. Further, she testified it would have been "unthinkable" for her not to include such information, since knowingly failing

to include it would have amounted to aiding and abetting a fraud upon a tribunal, for which she could have lost her license. Regardless, the failure to schedule a claim in bankruptcy (as well as the reasons for such failure) can have no relevance to the bankrupt's standing to bring a subsequent claim. Once a bankruptcy petition is filed, all claims belong to the estate, and the bankruptcy trustee alone has standing to pursue them. See generally 8A C.J.S. *Bankruptcy* § 27 (1988) ("No one other than the [bankruptcy] estate representative has standing to pursue the estate's causes of action ***"); 8A C.J.S. *Bankruptcy* § 117 (1988) (noting that "[a]ll claims and causes of action held by the debtor at the commencement of the case are included in the [bankruptcy] estate" and that "[w]hen the estate acquires a cause of action from the debtor, the cause of action no longer belongs to the debtor" and may be dismissed for lack of standing).

In advancing his reliance on the advice-of-counsel argument, plaintiff relies on cases holding that the omission of a claim from a bankruptcy petition or schedule, if done in good-faith reliance upon advice of counsel, does not invalidate a debtor's discharge in bankruptcy. See *In re Breitling*, 133 F. 146 (7th Cir. 1904); *In re Montgomery*, 86 B.R. 948 (Bankr. N.D. Ind. 1988). With these assertions we fully agree, and we would find them relevant were this an action challenging the validity of a debtor's discharge in bankruptcy, which it plainly is not. See 11 U.S.C. § 727(a)(4)(A) (1988) (court may grant a debtor a discharge in bankruptcy unless "the debtor knowingly and fraudulently *** made a false oath or account"). Plaintiff is bringing an action for money allegedly owed to him by defendants, not fending off a challenge to his earlier discharge in bankruptcy.

Plaintiff next attempts to sidestep his lack of standing by arguing that he had an oral "partnership" with Smith and Bittner (the jury so found), but he fails to explain how such a finding helps his cause. Even were we to accept such a finding (the overwhelming evidence established that any claims plaintiff had against defendants belonged to Overlay, if not to plaintiff personally), plaintiff ignores several relevant principles of partnership law. While it is true that the only "partnership property" before a bankruptcy court during an individual partner's bankruptcy is the debtor partner's personal property interest in the partnership (see *In re Pentell*, 777 F.2d 1281, 1285 (7th Cir. 1985); *Turner v. Central National Bank*, 468 F.2d 590, 591 (7th Cir. 1972)), a partner's share of partnership profits is the personal property of the partner. See 805 ILCS 205/26 (West 1994) ("A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property"). See also *Lindley v. Murphy*, 387 Ill. 506, 514, 56 N.E.2d 832 (1944); *In re Funneman*, 155

B.R. 197, 199 (Bankr. S.D. Ill. 1993). Since partnership profits are personal property, any claim to such profits falls within the ambit of section 541 of the Bankruptcy Code and becomes the property of the bankruptcy estate upon the filing of a bankruptcy petition. See *In re Smith*, 185 B.R. 285, 290-91 (Bankr. S.D. Ill. 1995) (acknowledging that limited partner's right to share profits is personal property of the partner that is included in the bankruptcy estate). See also 805 ILCS 210/701 (West 1994) ("A partnership interest [in a limited partnership] is personal property"); 805 ILCS 210/101(10) (West 1994) (defining "partnership interest" as "a partner's share of the profits and losses of a limited partnership and the right to receive distributions of partnership assets").

In the present case, plaintiff is seeking his share of profits supposedly generated by his partnership with defendants. Assuming *arguendo* that the alleged oral partnership existed and was proven, plaintiff's right to share such profits was personal property that became the property of the bankruptcy estate when plaintiff filed for bankruptcy in 1986. Divested of such property, he had no standing to pursue the instant claims. See also 805 ILCS 205/31(5) (West 1994) (stating that dissolution of a partnership is caused "[b]y the bankruptcy of any partner or the partnership"); *In re Gadberry*, 30 B.R. 13, 13-14 (Bankr. C.D. Ill. 1983) (permitting bankruptcy trustee to sell debtor's interest in a partnership, since such an interest—including a partner's right to share profits—is personal property unaffected by the bankruptcy of the debtor and the subsequent dissolution of the partnership). The trial court's grant of defendants' judgment *n.o.v.* motion was, therefore, required.

The trial court was equally justified in finding that plaintiff was judicially estopped from bringing the instant claims. Judicial estoppel prevents a party from asserting inconsistent positions before courts in separate proceedings in the hope of receiving favorable judgments in each proceeding. *Bidani v. Lewis,* 285 Ill. App. 3d 545, 550, 675 N.E.2d 647 (1996); *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 849-50, 635 N.E.2d 485 (1994). "At its heart, this doctrine prevents chameleonic litigants from 'shifting positions to suit the exigencies of the moment.'" *Ceres Terminals*, 259 Ill. App. 3d at 850, quoting *Cashmore v. Builders Square, Inc.*, 211 Ill. App. 3d 13, 18, 569 N.E.2d 1353 (1991). Judicial estoppel is designed to protect the integrity of the courts; it does not focus on the fairness of the relationship between the litigants. *Bidani*, 285 Ill. App. 3d at 551. Although judicial estoppel is flexible and not reducible to a single formula, Illinois courts have generally required the following five elements be established for application of the doctrine:

(1) the two positions must be taken by the same party; (2) the positions must be taken in judicial proceedings; (3) the positions must be given under oath; (4) the party must have successfully maintained the first position and thereby received some benefit; and (5) the two positions must be totally inconsistent. *Bidani*, 285 Ill. App. 3d at 550; *Ceres Terminals*, 259 Ill. App. 3d at 850. Application of the doctrine is within the discretion of the trial court. *Bidani*, 285 Ill. App. 3d at 550.

The trial court clearly acted within the bounds of its discretion in applying judicial estoppel here. Plaintiff's position in the present case—that he entered an oral "partnership" with defendants and is now entitled to his share of profits—is diametrically opposed to the position he maintained in the course of the bankruptcy proceedings. With his creditors waiting in the wings, plaintiff disclosed neither his alleged interest in this "partnership" nor his claim to profits. On his schedule B-2, plaintiff was asked to list "[c]ontingent and unliquidated claims of every nature, including counterclaims of the debtor." Plaintiff failed to list the present claims, responding, under penalty of perjury, only with "Possible Counter Claims vs. Mark Products [(one of plaintiff's creditors)], of dubious value." Plaintiff was asked whether he had "been in any partnership with anyone, or engaged in any business during the six years immediately preceding the filing of the original [bankruptcy] petition." Plaintiff declared, again under penalty of perjury, only that he had been "[e]mployed by Overlay Systems, Inc." Plaintiff obviously benefitted from his failure to disclose his claims against defendants, inasmuch as he was able to avoid his creditors by doing so. See *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993) (characterizing Payless' "plan" in bringing 20 claims against defendants following Payless' discharge in bankruptcy as "[c]onceal[ing] your claims; get[ting] rid of your creditors on the cheap, and start[ing] over with a bundle of rights"). Thus, plaintiff took totally inconsistent positions in separate judicial proceedings, under oath, to his benefit, and the trial court correctly concluded judicial estoppel was applicable. See *Luna v. Dominion Bank*, 631 So. 2d 917, 919 (Ala. 1993) (where the plaintiff filed suit against defendant 18 months after the plaintiff's bankruptcy, judicial estoppel was applicable, since plaintiff had failed to disclose the claims in the course of his bankruptcy); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419-20 (3d Cir. 1988) (holding the plaintiff was judicially estopped from bringing claims against the defendant that should have been disclosed in the plaintiff's earlier bankruptcy).

Relying on various federal decisions, plaintiff insists judicial

estoppel was inapplicable here since no bad faith on his part was demonstrated. See *In re Envirodyne Industries, Inc.*, 183 B.R. 812, 823 (Bankr. N.D. Ill. 1995) (collecting cases in which intentional misconduct has been found a necessary requirement for application of judicial estoppel); *Forty-Eight Insulations, Inc. v. Aetna Casualty & Surety Co.*, 162 B.R. 143, 147-48 (N.D. Ill. 1993); *Elliott v. ITT Corp.*, 150 B.R. 36, 40 (N.D. Ill. 1992) (refusing to apply judicial estoppel against a plaintiff who failed to disclose a claim in an earlier bankruptcy proceeding, since plaintiff had simply been unaware of the claim). See also *Ceres Terminals*, 259 Ill. App. 3d at 850 (judicial estoppel intended to prevent litigants from "engaging in 'cynical gamesmanship' [citation] or '[h]oodwinking' a court" and is to be applied where there has been intentional self-contradiction); *Cashmore*, 211 Ill. App. 3d at 18 (doctrine designed to prevent litigants from "deliberately shifting positions"). However, plaintiff did not sufficiently demonstrate that his failure to disclose the instant claims in bankruptcy was the result of inadvertence or mistake. See *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993); *In re Cassidy*, 892 F.2d 637, 642 (7th Cir. 1990); Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw. U.L. Rev. 1244, 1264-65 (1986). Plaintiff admits he was aware of the claims at the time he filed his bankruptcy petition, and he had an obvious motive for concealing such claims from his creditors. His attempt to pass the blame onto his bankruptcy counsel was thoroughly refuted by his former counsel's own testimony. We believe this combination of preexisting knowledge of the claims, a motive for concealment, and a failed attempt to establish reliance on the advice of counsel, in the face of an affirmative duty to disclose the claims in bankruptcy, was sufficient to imply that plaintiff has acted in bad faith, *i.e.*, that he has "played fast and loose with the courts." See *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 363 (3d Cir. 1996) (holding the plaintiff was judicially estopped from bringing claim that he had earlier failed to disclose in bankruptcy, finding the combination of knowledge of the claim and motive for concealment in the face of an affirmative duty to disclose gave rise to an inference of bad faith).

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA and RAKOWSKI, JJ., concur.