LOS AMIGOS SUPERMARKET, INC., Plaintiff and Counterdefendant, v. METROPOLITAN BANK AND TRUST COMPANY, as Trustee, Defendant (Ernesto A. Avina, Defendant and Counterplaintiff and Third-Party Plaintiff-Appellee and Cross-Appellant; Ray O. Rodriguez, Third-Party Defendant-Appellant and Cross-Appellee).

First District (4th Division)    No. 1—96—3118

Opinion filed June 17, 1999.

Raymond O. Rodriguez, William G. Stone, and James R. Branit, all of Bullaro, Carton & Stone, of Chicago, for appellant.

Janet L. Hermann, of Greenburg & Hermann, of Chicago, for appellee.

JUSTICE HALL delivered the opinion of the court:

Following trial, the jury returned a verdict in favor of third-party plaintiff Ernesto A. Avina (Avina) and against third-party defendant Ray O. Rodriguez (Rodriguez), in Avina's action for fraud. The jury assessed compensatory damages in the amount of $183,024 and punitive damages in the amount of $450,000. Rodriguez filed a posttrial motion seeking, alternatively, a judgment notwithstanding the verdict (judgment *n.o.v.*), a new trial, or a remittitur of the compensatory and punitive damages. The trial court remitted the punitive damages to $180,000 but denied the remainder of the motion. Rodriguez now appeals. Avina cross-appeals from the trial court's order directing a finding in favor of Rodriguez on Avina's negligence claim. We reverse the judgment of the circuit court and remand for a new trial.

This case involves the improved parcel of real estate commonly

known as 117-23 North Broadway, Melrose Park, Illinois (the Property), which is held in a land trust of which the Metropolitan Bank and Trust Company (the trustee) is the trustee and Avina is the sole beneficiary. Pursuant to a lease dated August 1, 1985, Los Amigos Supermarket, Inc. (Los Amigos), operated a supermarket on the Property.

In 1990, Los Amigos filed a verified complaint for declaratory judgment and reformation in the chancery division, against the trustee and Avina, seeking to construe the terms of the lease. Avina filed a counterclaim against Los Amigos and Hector and Samuel Porras for a constructive trust and accounting. Hector and Samuel Porras are the brothers-in-law of Rodriguez and the sole shareholders of Los Amigos. Avina also filed a third-party complaint against Rodriguez alleging fraud and negligence. Avina alleged that Rodriguez, his personal attorney, had fraudulently assigned Avina's interest in Los Amigos to one or both of the Porrases and had prepared a lease allowing Los Amigos to rent the property at a rate substantially below the fair market value. He further alleged that he had paid Rodriguez and Los Amigos sums totalling $125,000 for corporate expenses and inventory.

The chancery division dismissed two counts of Avina's counterclaim and transferred several others to the law division. The case proceeded to trial on Los Amigos' complaint and the remaining counts of Avina's counterclaim. The trial court denied Los Amigos' requested construction of the lease and denied Avina's claims for the imposition of a constructive trust and accounting. Avina appealed the trial court's judgment in that case, and we affirmed. *Los Amigos Supermarket, Inc. v. Metropolitan Bank & Trust Co.*, No. 1—93—0869 (1994) (unpublished order under Supreme Court Rule 23) (hereinafter referred to as *Los Amigos I*).

In February 1996 the parties proceeded to trial in the law division on Avina's third amended third-party complaint, which was directed solely against Rodriguez and sought recovery on the basis of fraud and negligence. During the jury trial, it was established that Rodriguez began representing Avina in various legal matters in the mid-1970s. He represented Avina when Avina purchased the Property in 1983 from Edward Mazzei, who was operating a grocery store on the premises. After the purchase, Mazzei continued to operate the grocery store, renting the space from Avina for $4,000 per month until July or August 1985. It is undisputed that in July 1985, Rodriguez prepared articles of incorporation for Los Amigos (the Articles), listing Avina as the corporation's sole incorporator. It is further undisputed that, in early August 1985, Rodriguez prepared an assignment (the Assignment) transferring Avina's interest in Los Amigos to Rodriguez's brother-in-law Hector Porras (Porras). The remainder of the facts are in dispute.

According to Avina, Rodriguez suggested to him that they form a corporation and operate a grocery store on the Property themselves. Rodriguez was to manage the store with the help of his brother-in-law, Porras, and Avina was to provide most of the capital. Avina agreed and put Rodriguez in charge of setting up the corporation. Avina testified that he and Rodriguez were to split 50/50 the profits from Los Amigos and Porras was to receive a salary. Avina also testified that he believed that he was the sole owner of Los Amigos.

Avina denied ever telling Rodriguez that he was no longer interested in owning a grocery store and denied signing the Assignment of his interest in Los Amigos to Porras. He testified that he gave Rodriguez $125,000 in cash for the corporation's use in three installments between July 1985 and September 1985. Sometime in 1986, Avina gave Rodriguez an additional $30,000 to pay for a sprinkler system for the Property.

Avina testified that toward the end of 1985 he asked Rodriguez for the records from Los Amigos. Rodriguez informed him that the records would not be complete until the following year. When Avina asked for the records in 1986, Rodriguez gave him copies of several inventories and informed Avina that the corporation's profits were being used to purchase more inventory. In 1987, Avina listed both the Property and Los Amigos for sale. At that time, Avina found out that Rodriguez had listed both the Property and the corporation for sale with another realtor. Avina did not authorize Rodriguez to do so. Avina then obtained the services of another lawyer and subsequently learned that his interest in Los Amigos had been assigned to Porras.

Rodriguez testified that it was Avina's idea to form a corporation to run a grocery store on the Property. Rodriguez neither suggested that the corporation be formed nor asked to participate in it, but he did tell Avina that Porras might be interested in joining the operation. After Rodriguez prepared and filed the Articles at Avina's direction, Avina told Rodriguez that he no longer wanted to operate a grocery store. Avina told Rodriguez to prepare an Assignment, assigning all of Avina's rights in the Articles to Porras. Rodriguez prepared the Assignment, presented it to Avina for signature, and when Avina returned it, Rodriguez gave it to Porras.

In early August 1985 Rodriguez opened a checking account for Los Amigos. He was a signatory on the account, as was Porras. Rodriguez testified that Avina gave him money on several occasions and that at least some of that money was deposited in the Los Amigos account. Rodriguez testified that all of the money given to him by Avina was for repairs to the Property, which Avina had asked Rodriguez to oversee. Rodriguez testified that the total amount of money given to him

by Avina for repairs was $90,000 to $97,000, rather than $125,000 as Avina had testified. Rodriguez testified that he had prepared a list summarizing the repairs made to the property using Avina's money. According to Rodriguez, the repairs totalled $92,853.56. Rodriguez acknowledged that from the money Avina gave him, Los Amigos paid $15,000 as a membership fee to Certified Grocers. According to Rodriguez, he told Avina that he had used some of the money for that purpose and Avina told him to "help [the Porrases] out so that they could get started as soon as possible." Avina denied this.

Rodriguez testified that sometime around August 28, 1985, he attended the first shareholders meeting of Los Amigos, at which he and the Porrases appointed themselves directors of Los Amigos. Avina was not present at the meeting. Rodriguez and the Porrases elected Porras as president and treasurer; Samuel Porras as vice-president; and Maria Rodriguez, who was Rodriguez's wife and the Porrases' sister, as secretary. The stock certificates were issued and distributed equally between the Porrases. Rodriguez testified that he has never owned stock in Los Amigos and has never received money from the corporation other than payment for legal services rendered. Rodriguez did acknowledge that he was listed as president of Los Amigos on the corporation's 1986 annual report filed with the Secretary of State and as president and 100% shareholder of Los Amigos on its membership application for Certified Grocers. He signed the latter document only to help Porras get a line of credit.

Both parties also testified regarding the lease under which Los Amigos leased the Property. Two leases were admitted into evidence. The two leases, both dated August 1, 1985, were identical in all terms except rent. Each lease was for a five-year term with an option to renew for another five-year term. Each lease provided that Los Amigos would receive one year of free rent in exchange for making unspecified repairs to the premises. However, the schedule of rents for the remaining years differed under the two leases.

Rodriguez testified that he prepared the first lease, at Avina's request, before Avina had assigned his interest in the Articles to Porras. Avina told Rodriguez the amount of rent to be charged. Under the terms of that lease (the $2,300 lease), the second through fifth years of rent ranged from $2,300 to $3,500. Rodriguez testified that when the lease was signed Avina had already assigned his interest in the Articles to Porras. Porras signed the lease on behalf of Los Amigos and Avina signed as beneficial owner of the Property.

Rodriguez testified that Avina later told him to prepare a second lease with a lower rent so that Avina could use the lease to apply for a reduction in real estate taxes. Under the terms of the second lease

(the $2,000 lease), the second through fifth years of rent ranged from $2,000 to $2,800. Porras and Avina both signed this lease.

Avina, on the other hand, testified that to his knowledge Rodriguez had prepared only one lease. He was shown and denied signing the $2,300 lease, but acknowledged signing the $2,000 lease. Avina testified that Rodriguez had suggested the lower rental rate, saying that it would lower the real estate taxes and increase Los Amigos' profits. Several months after he signed the lease, Avina received a copy signed by Porras on behalf of Los Amigos. When Avina questioned this, Rodriguez told him that Porras had signed on behalf of Los Amigos because he was the store's manager. About five months after signing the lease, Avina filed a real estate tax appeal seeking a tax reduction for the Property. The real estate taxes were cut almost in half.

Rodriguez testified that when preparing the two leases he was representing only Avina and not Los Amigos. He further testified that he informed Avina of the potential conflict of interest. Avina denied this.

The evidence deposition of Avina's handwriting expert, James Hayes, was presented during the trial. In Hayes' opinion, Avina did not sign either the Assignment or the $2,300 lease. However, in Hayes' opinion, those two documents had been signed by the same person.

Porras testified that in July 1985 Rodriguez asked him if he would be interested in working at a grocery store that one of Rodriguez's clients was opening. Rodriguez later told Porras that the client, Avina, was no longer interested in operating the grocery store and was instead looking for a tenant. In the first few days of August 1985, Porras met Avina for the first time at the Property. Within a few days of that meeting, the Articles were assigned to Porras and he signed a lease on behalf of Los Amigos. Porras testified that he was a 50% owner of Los Amigos, with the other 50% being owned by his brother.

Porras testified that during the time he operated Los Amigos, Avina never asked to see the corporation's records or a financial report and never asked for a share of the profits. According to Porras, in November or December 1986 Avina informed him that there was a potential buyer for both the Property and Los Amigos. Avina told Porras that he would receive $150,000 for the corporation. Porras refused to sell at that price. Avina denied that this ever occurred.

On appeal Rodriguez asserts various bases to support his contention that we should reverse the trial court's denial of his motion for a judgment *n.o.v.* or, in the alternative, a new trial or a remittitur of damages.

■ We first address Rodriguez's contention that he is entitled to a judgment *n.o.v.* because Avina made a binding judicial admission that

he signed the Assignment. The trial court should grant a motion for a judgment *n.o.v.* only when all of the evidence, when viewed in the light most favorable to the opposing party, so overwhelmingly favors the movant that no contrary verdict could stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504 (1967). This is the same standard which we must apply on review from the trial court's denial of the motion. *Dabros v. Wang*, 243 Ill. App. 3d 259, 263, 611 N.E.2d 1113 (1993).

On July 7, 1992, Rodriguez filed an answer and affirmative defenses to Avina's third-party complaint. Paragraph 1 of Rodriguez's first affirmative defense reads as follows:

> "On August 1, 1985, Ernesto Avina, with full knowledge of the consequences and the implications of doing so, voluntarily assigned to Hector Porras, president of Los Amigos Supermarket, Inc., all of Ernesto Avina's rights and interests in the certificate of incorporation of Los Amigos Supermarket, Inc., which had been subscribed to by Ernesto Avina."

Paragraph 1 of Rodriguez's second affirmative defense was almost identical. On August 4, 1992, Avina filed a verified answer to the affirmative defenses, answering both paragraphs as follows: "Third Party Plaintiff admits signing the document at direction of Third Party Defendant, RAY O. RODRIGUEZ, but denies each and every remaining allegation contained in paragraph 1."

In February 1993 after the counts against Rodriguez had been severed and just before Avina and Los Amigos proceeded to trial in the chancery division, Avina presented a motion before Judge Dunne to withdraw his verified answer to Rodriguez's affirmative defenses and file a new answer. In his written verified motion, Avina asserted that his original answer had been the result of *a misunderstanding* between himself and his counsel. The motion stated:

> "3. That ERNESTO A. AVINA, not being fully fluent in reading and writing of the English language, advised counsel that he did not remember signing the document referred to in the Affirmative Defenses, but that the signature was similar to his and stated that RODRIGUEZ would often have him sign 'lots of documents.' But ERNESTO A. AVINA insisted that he did not sign the document described as the Corporate assignment."

Judge Dunne did not permit Avina to withdraw the original verified answer but did allow him to file an amended answer, in which he denied having signed the Articles and denied the remaining allegations. This court, in its disposition of *Los Amigos I*, stated: "In sworn pleadings, Avina acknowledged signing the Assignment, but at trial denied having done so." *Los Amigos I*, slip op. at 4.

Rodriguez now argues that Judge Dunne in the chancery action and this court in *Los Amigos I* previously determined that Avina's answer was a judicial admission that he signed the Assignment and that we are bound by those determinations. Because a trial court's rulings have no preclusive effect, we need not devote any attention to Judge Dunne's determinations. We must, however, determine whether our own earlier pronouncement requires us to find Avina should have been prohibited from introducing evidence that he did not sign the Assignment.

■ In *Los Amigos I*, we stated that Avina had acknowledged in sworn pleadings that he signed the Assignment. This does not, however, compel the conclusion that Avina's original verified answer constituted a binding judicial admission. Indeed, in *Los Amigos I*, we never held that Avina's verified answer was a binding judicial admission. A fact admitted in a verified pleading is a binding judicial admission, which dispenses with the requirement of proof as to that fact. *Winnetka Bank v. Mandas*, 202 Ill. App. 3d 373, 559 N.E.2d 961 (1990). A verified pleading remains part of the record even after the filing of an amended pleading, and any admission in a verified pleading which is not the product of mistake or inadvertence remains binding on the pleader even after the amendment. *In re Marriage of O'Brien*, 247 Ill. App. 3d 745, 617 N.E.2d 873 (1993).

Relying on *American National Bank & Trust Co. v. Erickson*, 115 Ill. App. 3d 1026, 452 N.E.2d 3 (1983), Rodriguez contends that Avina is bound by the admission in his verified answer because his redemptive explanation was contained in his motion to amend rather than in the amended answer itself. In *American National Bank*, the defendants filed a motion for leave to amend their answer " 'due to inadvertence' " and then filed an amended answer which denied the previous admissions but contained no allegations that the original answer had been a product of inadvertence. 115 Ill. App. 3d at 1029. Defendants gave no explanation for the inadvertence in either the motion or the amended answer. The court found that the admissions contained in the original verified answer were binding judicial admissions because the defendants had "merely abandoned the sworn admissions contained in their original answer without sufficient explanation." *American National Bank*, 115 Ill. App. 3d at 1029-30.

■ We find the instant case distinguishable from *American National Bank* because Avina did not simply abandon the admission in his original verified answer without sufficient explanation. In his verified motion to amend, Avina retreated from his admission, explaining that the reason for the incorrect answer was a miscommunication attributable to a language barrier. Unlike in *American National Bank*,

Avina provided a redemptive explanation for the inadvertence, not merely a statement that there was inadvertence. Because Avina properly demonstrated that his verified answer was a product of inadvertence, the verified answer did not constitute a binding judicial admission but simply 'an evidentiary admission, which could be controverted. *Yarc v. American Hospital Supply Corp.*, 17 Ill. App. 3d 667, 307 N.E.2d 749 (1974); *O'Brien*, 247 Ill. App. 3d at 749. Therefore, the trial court did not err in allowing Avina to present evidence that he did not sign the Assignment.

■ On a related note, we agree with Rodriguez that he was prejudiced by the trial court's ruling that Avina's handwriting expert could not testify regarding the signature on the Articles.

■ We further reject Rodriguez's contention that he is entitled to a judgment *n.o.v.* because Avina failed to establish that he had suffered any actual injury, an essential element of a cause of action for fraud. See *Shah v. Chicago Title & Trust Co.*, 119 Ill. App. 3d 658, 457 N.E.2d 147 (1983). Rodriguez makes various arguments with regard to each element of damages. Rodriguez asserts that the jury was improperly instructed as to the measure of damages flowing from the lease because it was not instructed to deduct the amount Avina saved in real estate taxes by virtue of the lease. Rodriguez further contends that the real estate tax savings exceeded any loss in rent and that Avina, therefore, suffered no injury. We find that there was insufficient evidence introduced at trial to establish that the reduction in real estate taxes was attributable to the $2,000 lease Avina signed.

Rodriguez also contends that Avina is collaterally estopped from seeking recovery of any of the money he gave to Rodriguez because this court, in its disposition of *Los Amigos I*, found that the money in question inured to Avina's benefit.

■ Collateral estoppel prohibits litigation of an issue where that identical issue was decided in a prior lawsuit in which there was a final adjudication on the merits and in which the party against whom the estoppel is asserted was a party or in privity with a party. *Kessinger v. Grefco, Inc.*, 173 Ill. 2d 447, 672 N.E.2d 1149 (1996). It bars relitigation of "controlling facts or questions material to the determination of both causes." *Anderson v. Financial Matters, Inc.*, 285 Ill. App. 3d 123, 672 N.E.2d 1261 (1996). The party asserting the estoppel "bears the heavy burden of showing with clarity and certainty that the identical issue was decided in the prior case." *St. Paul Fire & Marine Insurance Co. v. Lefton Iron & Metal Co.*, 296 Ill. App. 3d 475, 694 N.E.2d 1049 (1998).

■ In *Los Amigos I*, we affirmed the trial court's denial of Avina's claim for a constructive trust on Los Amigos' stock because we found

that Avina had not established that he had ever had an ownership interest in Los Amigos or that the Porrases, the owners of the corporation, committed a fraud. We further noted:

"Although it is true that Avina invested $120,000 or $125,000 in Los Amigos, those sums were provided for, *inter alia*, repairs to the roof and heating and kitchen systems as well as for the installation of a sprinkler system, all of which benefitted the building Avina owned. There is no evidence that the sums he contributed were used for the operation of Los Amigos, the corporation on whose shares Avina now seeks to impose a trust. Moreover, as we will discuss more fully below, Avina seeks recovery for those sums in Count IV of his amended counterclaim and third party complaint, suggesting that he gave those monies as a loan." *Los Amigos I*, slip op. at 12.

The finding that Avina had never established an ownership interest in the corporation or any fraud on the part of the Porrases was a sufficient basis to support the ruling that Avina was not entitled to a constructive trust. However, Rodriguez contends that the further finding that the money in question was not used for the operation of Los Amigos but, rather, to repair the Property was an alternative basis for the ruling which can be used to collaterally estop Avina from relitigating the issue. See *Bernabei v. County of La Salle*, 258 Ill. App. 3d 799, 630 N.E.2d 538 (1994)

A thorough review of our Rule 23 Order in *Los Amigos I* disputes the conclusion that we intended our statement regarding the use of the funds to be an independent basis of our ruling thereby barring future litigation as to the funds. This is evidenced by the fact that we specifically mentioned that Avina had an adequate remedy at law as to the funds and that he was pursuing that remedy in the counts that had been transferred to the law division. Avina was not collaterally estopped from litigating the issue of the $125,000 he allegedly gave to Rodriguez.

■ We address Rodriguez's contention that the jury instruction on this element of damages did not properly describe the measure of damages, as the issue may arise on remand. The jury was instructed to calculate damages, if any, on this element as "the value of money given to [Rodriguez] to operate Los Amigos Supermarket, Inc." We agree with Rodriguez that if the jury were to find that some of the money was used to pay for repairs that Avina was legally required to make, Avina would not be entitled to recover those funds. Therefore, on remand, this jury instruction should be modified to reflect the proper measure of damages.

■ We next address Rodriguez's contention that he is entitled to a

new trial because the jury's verdict was against the manifest weight of the evidence. A verdict is against the manifest weight of the evidence only when it is palpably erroneous, clearly the result of passion and prejudice, or arbitrary and unreasonable. *Dabros v. Wang*, 243 Ill. App. 3d 259, 611 N.E.2d 1113 (1993). We will not disturb the trial court's ruling on a motion for a new trial absent an abuse of discretion. *Jacobs v. Union Pacific R.R. Co.*, 291 Ill. App. 3d 239, 683 N.E.2d 176 (1997).

■ In order to sustain a cause of action for fraud, the plaintiff must prove that the defendant made a false statement of material fact, which he knew or believed to be false, with the intent to induce the plaintiff to act in reliance on the statement and that the plaintiff did, in fact, act in reasonable reliance on that false statement and was injured as a result. *State Security Insurance Co. v. Frank B. Hall & Co.*, 258 Ill. App. 3d 588, 630 N.E.2d 940 (1994). These elements must be proven by clear and convincing evidence. *Brown v. Broadway Perryville Lumber Co.*, 156 Ill. App. 3d 16, 508 N.E.2d 1170 (1987).

■ We reject Rodriguez's contention that Avina's testimony was uncorroborated and, as such, did not constitute the clear and convincing evidence necessary to sustain his action. *Parsons v. Winter*, 142 Ill. App. 3d 354, 491 N.E.2d 1236 (1986), which he cites in support of this contention, does not stand for the proposition that a party's uncorroborated testimony can never establish the elements of a fraud action by clear and convincing evidence, but only that it did not do so in that particular case. In the present case the jury was properly instructed on the burden of proof. This case turned on the credibility of the witnesses. Determinations regarding witness credibility, the weight to be accorded the evidence, and the resolution of conflicting evidence are for the trier of fact to make. *Maple v. Gustafson*, 151 Ill. 2d 445, 603 N.E.2d 508 (1992).

We further reject Rodriguez's contention that Avina never established reasonable reliance on Rodriguez's alleged misrepresentations. Rodriguez points to the evidence that Avina never asked Porras for the corporation's books or financial records, apparently arguing that this evidence suggests that Avina did not believe himself to be part owner of the corporation. Avina, however, testified that he did ask Rodriguez for financial information regarding Los Amigos on several occasions and was given various excuses. Rodriguez also contends that Avina did not prove his reliance was justified because he could have contacted the Secretary of State or Porras in order to determine whether he owned a portion of Los Amigos. Rodriguez correctly states that reliance is generally not justified where the parties have equal knowledge or means of obtaining knowledge of the misrepresented

facts. *Chicago Export Packing Co. v. Teledyne Industries, Inc.*, 207 Ill. App. 3d 659, 566 N.E.2d 326 (1990). The plaintiff, may, however, justifiably rely where the defendant has created a false sense of security or blocked further inquiry, provided that the facts were not such as to put a reasonable person on inquiry. *Carter v. Mueller*, 120 Ill. App. 3d 314, 457 N.E.2d 1335 (1983); *Marino v. United Bank of Illinois, N.A.*, 137 Ill. App. 3d 523, 484 N.E.2d 935 (1985).

While the evidence established that Avina was an experienced businessman who owned full or part interest in several businesses, it further established that Avina authorized his attorney, Rodriguez, whom he also believed to be his business partner in Los Amigos, to take the necessary steps to form the corporation with Avina as part owner. The evidence also established that Rodriguez had done legal work for Avina for many years. Given the parties' history, Avina had no reason to believe that Rodriguez had not created the corporation with Avina as part owner. We do not believe that the jury's finding of justifiable reliance was against the manifest weight of the evidence.

■■ Rodriguez next contends that he is entitled to a new trial because he was unfairly prejudiced when Avina's counsel unexpectedly changed her theory of the case on the last day of trial, suggesting that Avina had actually signed the $2,300 lease and that Rodriguez then altered that lease. During cross-examination, Avina's counsel asked Rodriguez: "Sir, isn't it, in fact, true that [the $2,000 lease] and [the $2,300 lease] are the exact same lease, and you changed the amount?" Rodriguez denied this. He also denied that the $2,000 lease appeared to have been altered. The court allowed Avina's counsel to publish the $2,000 lease to the jury over an objection by Rodriguez's counsel that there was no evidence to support the theory that the lease had been altered.

On appeal, Rodriguez contends that counsel's questions were highly prejudicial as there was no evidence adduced at trial to support Avina's counsel's assertions that only one lease actually existed and that Rodriguez altered that lease after Avina signed it. At trial, Avina denied signing the $2,300 lease and admitted signing the $2,000 lease. Avina never testified that he was uncertain as to the rent provisions on the lease he signed or that he believed that the lease he signed had been altered.

In support of his argument that he is entitled to a new trial, Rodriguez cites several cases in which the unperfected impeachment of witnesses was found to be so prejudicial as to require reversal. *Mazurek v. Crossley Construction Co.*, 220 Ill. App. 3d 416, 581 N.E.2d 59 (1991); *Green v. Cook County Hospital*, 156 Ill. App. 3d 826, 510 N.E.2d 3 (1987). We find the unsupported innuendo created by counsel's questions regarding alteration of the lease requires the same result.

The error was compounded by Avina's counsel's unsupported argu- ments during closing argument that there was "no question" the lease had been changed and that while the signature on the $2,000 lease was Avina's, Avina did not know what figures were on the lease at the time he signed it. Although counsel is allowed to draw all reasonable inferences from the evidence during closing arguments, she is not permitted to misrepresent the evidence, argue facts not in evidence, or "create her own evidence." *Lecroy v. Miller*, 272 Ill. App. 3d 925, 933, 651 N.E.2d 617 (1995); *Taluzek v. Illinois Central Gulf R.R. Co.*, 255 Ill. App. 3d 72, 626 N.E.2d 1367 (1993). While Rodriguez did not object to counsel's comments during closing argument, waiver generally does not result where the comments were so inflammatory or prejudicial as to deny a party a fair trial. *Limanowski v. Ashland Oil Co.*, 275 Ill. App. 3d 115, 655 N.E.2d 1049 (1995).

We cannot say that counsel's questions and closing argument did not affect the outcome of the case. This was a close case which turned for the most part on witness credibility. The unsupported innuendo by Avina's counsel could have tarnished Rodriguez's credibility. Where the case is a close one on the facts and the jury could have decided either way, any substantial error that might have tipped the scales in favor of the successful party calls for a new trial. *Green*, 156 Ill. App. 3d at 829. We must reverse the trial court's judgment and remand for a new trial.

Because the issue may arise again on remand, we address Rodriguez's contention that the instruction regarding punitive damages was improper. The trial court instructed the jury: "if you find for [Avina] and if you find [Rodriguez]'s conduct was a violation of trust or confidence and caused damage to the plaintiff, and if you believe that justice and the public good require it, you may, in addition to any other damages to which you find [Avina] entitled, award an amount which will serve to punish the defendant and to deter the defendant and others from similar conduct." See Illinois Pattern Jury Instructions, Civil, No. 800.06 (3d ed. 1994).

We first note that the fact that this instruction was drawn from the Illinois Pattern Jury Instructions (IPI) does not mean that it is automatically an accurate and correct statement of the law. There has not been any advance approval of the IPI by the supreme court and they are open to challenge. *Powers v. Illinois Central Gulf R.R. Co.*, 91 Ill. 2d 375, 438 N.E.2d 152 (1982).

Under Illinois law, punitive damages may be awarded where the wrongful act committed by the defendant "is characterized by wantonness, malice, oppression or other circumstances of aggravation." *In re Estate of Wernick*, 127 Ill. 2d 61, 535 N.E.2d 876 (1989);

see also *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 563 N.E.2d 397 (1990). In a fraud action, punitive damages are proper " 'where the false representations are wantonly and designedly made.' " *Home Savings & Loan Ass'n v. Schneider*, 108 Ill. 2d 277, 284, 483 N.E.2d 1225 (1985), quoting *Laughlin v. Hopkinson*, 292 Ill. 80, 89 (1920). In *Home Savings & Loan Ass'n*, the trial court instructed the jury in a fraud case that it could award punitive damages if it found the defendant was guilty of "fraud and deceit." 108 Ill. 2d at 285. The supreme court found this instruction to be insufficient because it did not require the presence of wilful and wanton conduct. This case is similar to *Home Savings & Loan Ass'n* in that the instruction given did not limit punitive damages to a situation where the jury found wilful and wanton conduct.

██ We find that if Avina had been proceeding under a theory of intentional fraud, the instruction given would have been sufficient because it would have been given in conjunction with an earlier instruction requiring the jury to find wilful and wanton conduct. We further find that because Avina was proceeding under a theory other than intentional fraud, the instruction given should have included language limiting punitive damages to a situation where the jury found Rodriguez's conduct to be wilful and wanton. On remand the punitive damages instruction should be modified accordingly.

Finally, we consider Avina's cross-appeal. Avina contends that the trial court erred in entering a directed verdict in favor of Rodriguez on Avina's negligence claim. The trial court directed a verdict in Rodriguez's favor because Avina failed to present expert evidence as to the standard of care.

██ A motion for a directed verdict should be granted when, viewing all the evidence in the light most favorable to the party opposing the motion, the evidence so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Walter v. Carriage House Hotels, Ltd.*, 164 Ill. 2d 80, 646 N.E.2d 599 (1995). Our review of the trial court's ruling on such a motion is *de novo*. *Dailey v. Smith*, 292 Ill. App. 3d 22, 684 N.E.2d 991 (1997).

██ In order to establish a *prima facie* case of legal malpractice, a client must establish that an attorney-client relationship existed, that the attorney deviated from the standard of care owed to his client, and that this deviation was the proximate cause of the client's actual damages. *Spivack, Shulman & Goldman v. Foremost Liquor Store, Inc.*, 124 Ill. App. 3d 676, 465 N.E.2d 500 (1984). An attorney must exercise a reasonable degree of care and skill in the representation of his clients. *Spivack*, 124 Ill. App. 3d at 683. The plaintiff must generally establish the standard of care against which the attorney's conduct

must be measured through expert testimony, and the failure to present such testimony is generally fatal to a legal malpractice action. *Barth v. Reagan*, 139 Ill. 2d 399, 564 N.E.2d 1196 (1990). An exception exists where the attorney's negligence is so apparent that a lay person would have no difficulty seeing it. *Barth*, 139 Ill. 2d at 407-08.

■ Due to the complexity of this matter, we find that expert testimony was necessary. However, we further find that Rodriguez himself provided the necessary expert testimony regarding the standard of care. Rodriguez admitted the existence of an attorney-client relationship between Avina and himself. Rodriguez further admitted that he owed a duty to exercise a reasonable degree of care and skill in his representation of Avina and that he was bound by the Rules of Professional Conduct (134 Ill. 2d R. 1.1 *et seq.*). As in a medical malpractice action where the testimony of the defendant doctor may suffice to establish the standard of care, the testimony of a defendant attorney may suffice to establish the standard of care in an action for legal malpractice. See *Rohe v. Shivde*, 203 Ill. App. 3d 181, 560 N.E.2d 1113 (1990).

Accordingly, for the reasons discussed above, the judgment of the circuit court of Cook County is reversed and this matter is remanded for a new trial.

Reversed and remanded.

HOFFMAN and WOLFSON, JJ., concur.